# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| JASMINE HUNGERMAN,<br>*Plaintiff,*<br><br>v.<br><br>KEISER UNIVERSITY,<br>PROFESSOR BROOKE DECKER,<br>PROFESSOR AMBERLYN<br>GENTRY, DEAN HAROLD<br>TRINDLE, PROGRAM<br>DIRECTOR KIMBERLY PRESTO,<br>AND DOES 1-100;<br><br>    *Defendants.* | Case No: 8:21-cv-00318-MSS-JSS<br><br>HON. MARY SCRIVEN |

## JOINT MOTION ALLOWING PLAINTIFF TO FILE THIRD AMENDED COMPLAINT

**NOW COME** all Parties in this matter, by and through their attorneys of record, to submit the following Joint Motion to Allow Plaintiff to File a Third Amended Complaint.

On November 15, 2021, Defendants filed a Motion to Dismiss, Or In the Alternative, Motion for a More Definite Statement As To the First, Second, Third, Fourth, Fifth, Sixth, and Thirteenth Causes of Action In The Second Amended Complaint ("Defendants' Motion"). (ECF #35.) Plaintiff's response to Defendants' Motion is due on December 13, 2021. However, after discussion between the parties, the parties agree that filing a Third Amended Complaint instead of a Response to Defendants' Motion would cure the issues established in Defendants' Motion. Plaintiff's Third Amended Complaint is attached hereto as Exhibit A.

**WHEREFORE**, the Parties move for and respectfully request that this Court order the following:

1. Allow Plaintiff to file a Third Amended Complaint instead of a Response to Defendants' Motion, due December 13, 2021.

2. Defendants' response brief is due 20 days after Plaintiff files her Third Amended Complaint.

Respectfully submitted,

Dated: December 13, 2021     By: /s/ Keith Altman
                                            Keith Altman, Esq.
                                            *Counsel for Plaintiff*
                                            33228 West 12 Mile Road, Suite 375
                                            Farmington Hills, Michigan 48331
                                            Telephone: (248) 987-8929
                                            keithaltman@kaltmanlaw.com

Dated: December 13, 2021     By: /s/ Justin Sorel
                                            Justin C. Sorel, Esq.
                                            *Counsel for Defendants*
                                            Cole, Scott & Kissane, P.A.
                                            Esperante Building 222
                                            Lakeview Avenue, Suite 120
                                            West Palm Beach, Florida 33401
                                            Telephone (561) 383-9229
                                            justin.sorel@csklegal.com

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| JASMINE HUNGERMAN,<br>            *Plaintiff,*<br><br>v.<br><br>KEISER UNIVERSITY,<br>PROFESSOR BROOKE DECKER,<br>PROFESSOR AMBERLYN<br>GENTRY, DEAN HAROLD<br>TRINDLE, PROGRAM<br>DIRECTOR KIMBERLY PRESTO,<br>AND DOES 1-100;<br>            *Defendants.* | Case No: 8:21-cv-00318-MSS-JSS<br><br>HON. MARY SCRIVEN |

## PLAINTIFF'S THIRD AMENDED COMPLAINT FOR VIOLATIONS OF TITLE III AND TITLE V OF THE AMERICANS WITH DISABILITIES ACT, SECTION 504 OF THE REHABILITATION ACT, AND STATE LAW CLAIMS

NOW COMES Plaintiff, **JASMINE HUNGERMAN**, by and through her attorneys, The Law Office of Keith Altman for her Complaint against Defendants, hereby states the following:

## OVERVIEW OF THE ACTION

1. Defendant ("KU" or "Defendant") is an accredited for-profit private career university that provides educational programs at the undergraduate and graduate levels in traditional, nontraditional, and online formats.

2. Defendant KU is a recipient of federal funding.

3. KU operates 20 campuses within the state of Florida, including their Lakeland campus. KU's Lakeland campus has numerous program offerings, including their Associate Science in Nursing ("ASN") program and their accelerated Bachelor Science in Nursing ("BSN") program.

4. During the times relevant to this case, KU employed the following individuals: Mrs. Decker ("Professor Decker"), a professor; Dr. Gentry ("Professor Gentry"), a professor; Dean Trindle; Mrs. Cavanaugh; and the BSN Program Director Mrs. Presto ("Director Presto").

5. While enrolled as a student in KU's BSN program, Jasmine faced an unsafe, hostile, and hazardous educational environment, with continued harassment, retaliation, and abuse from the acts of KU's instructors, which aggravated her PTSD. Despite bringing these issues to the proper authorities within KU numerous times, KU failed to protect Jasmine from the abuse and refused to provide a reasonable accommodation for Jasmine's PTSD.

6. As a result of KU and their employees' actions and inactions, Jasmine has experienced significant emotional distress and trauma and aggravation of the symptoms of her post-traumatic stress disorder. The ultimate effect of this was that Jasmine was forced to withdraw her enrollment from KU on August 24th, 2020, depriving her of the educational benefits and opportunities that KU provides, and now faces challenges and complications arising from her lost earnings and earning capacity.

7. As per KU's website, their admissions documents, student handbook, and other Representations ("Representations") made by KU, KU was to provide an educational experience that:

a)   Will employ a "student-concept [that] has remained at the foundation of the Keiser mission and continues to attract students who enjoy a more personal learning environment."[1]

b)   Will be "committed to provide students with opportunities to develop the knowledge, understanding, and skills necessary for successful employment" and a "students first" philosophy.[2]

c)   KU's philosophy claims, in pertinent part, that "no person shall … be excluded from any training, be denied the benefits of training, or be subjected to discrimination in any … activity of the University because of … handicap."

d)   Claims to "[p]romote academic excellence and achievement through quality educational programs" by "[c]ontinuously review[ing], assess[ing] the effectiveness of, and consequentially enhance the educational and academic service programs of the University" and by "[p]rovid[ing]

---

[1] Why Keiser?: https://www.keiseruniversity.edu/why-keiser/.
[2] Mission Statement & Philosophy: https://www.keiseruniversity.edu/mission-statement/.

**THIRD AMENDED COMPLAINT**            - 4 -            **CASE NO. 8:21-cv-00318-MSS-JSS**

academic support services designed to enhance student learning."

e)    Claims to "[a]ttract and retain quality faculty and staff" by "[e]mploy[ing] and further develop[ing] a diverse faculty that … evidences high quality teaching, student support, and appropriate research abilities," and by "[e]ncourag[ing] and further develop[ing] qualified support staff and faculty who evidence an interest in and proclivity to assisting students, addressing learning and developmental challenges, and responding to the needs of a broad spectrum of University students in a variety of programs."

f)    Claims to "[d]evelop and maintain high-demand educational programs that are distinctive, accessible, and responsive to community, disciplinary, and student aspirations and needs" by "[p]rovid[ing] and ehanc[ing] a variety of educational delivery systems that respond to current and future student, community, and professional occupational needs and expectations."

g)      Claims to "[s]upport, cultivate, and expand faculty instruction, student learning, and academic program-appropriate research" by "[p]rovid[ing] the appropriate resources with which to support service and academic programs in the achievement and realization of student learning and programmatic outcomes"; by "[c]ultivat[ing] and enhance[ing] an educational atmosphere that fosters academic freedom, the open exchange of ideas, and programmatic academic inquiry"; and by "[d]evelop[ing] strategies that support the implementation of program- and degree-appropriate academic research."

h)      And "affirms that all members of the academic community share responsibility for establishing, implementing and evaluating its educational programs."

8. KU, through its actions and the actions of its employees, has:

a)      discriminated against Jasmine because of her PTSD and request for reasonable accommodations under federal law;

b)      failed to adequately consider Jasmine's reasonable accommodation for her disability;

c)      retaliated against her because of her reasonable withdrawal upon denial of her reasonable accommodations;

d)      interfered with Jasmine's seeking of reasonable accommodations;

e)      breached the contract formed by Jasmine's enrollment in KU's BSN program and ASN program;

f)      breached the duty of good faith and fair dealing;

g)      breached the express warranties of the enrollment contract;

h)      made fraudulent misrepresentations to induce students such as Jasmine to enroll at KU;

i)      negligently misrepresented the educational experience provided by KU to encourage students to enroll;

j)      retained employees that inadequately enforce KU's goals and federal law;

k)     intentionally inflicted emotional distress on Jasmine, resulting in an exacerbation of her PTSD resulting in physical and psychological pain;

l)     negligently inflicted emotional distress on Jasmine, resulting in a worsening of her PTSD resulting in physical and mental pain; and,

m)     maintained a business built on unfair business practices that were intended to mislead students into enrolling in an educational experience that claims, among other things, to put student needs first and foremost.

9. The way in which KU has treated Jasmine directly contravenes these Representations and federal law.

## PARTIES

10.     Defendant Keiser University ("KU") is an accredited for-profit private career university that provides educational programs at the undergraduate and graduate levels in traditional, nontraditional, and online formats. KU is accredited by the Southern Association of Colleges and Schools Commission on Colleges and operates 20 campuses within Florida, including the Lakeland campus.

11.     During the times relevant to this case, Defendant Brooke Decker was a professor employed by KU at their Lakeland campus.

12.     During the times relevant to this case, Defendant Amberlyn Gentry was a professor employed by KU at their Lakeland campus.

13.     During the times relevant to this case, Defendant Harold Trindle was a Dean employed by KU at their Lakeland campus.

14.     During the times relevant to this case, Defendant Kimberly Presto was a BSN Program Director employed by KU at their Lakeland campus.

15.     During the times relevant to this case, Defendant Does 1-100 are individual employees of KU.

16.     Plaintiff Jasmine Hungerman was a student enrolled at KU's Lakeland campus in their accelerated BSN program, which was directed by Defendant Presto. Plaintiff was a student of Defendant Decker and Defendant Gentry.

## JURISDICTION AND VENUE

17.     This action arises under the laws of the United States, and therefore this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

18.     This action arises under the following federal statutes: The Americans with Disabilities Act of 1990 (ADA), Pub.L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101 et seq., amended by the Americans with Disabilities Amendments Act (ADA-AA) with an effective date of January 1, 2009, which, at Title III of the ADA, prohibits discrimination by public accommodations. The Rehabilitation Act of 1973, §§ 504 and 505, as amended, 29 U.S.C.A. §§ 794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under §504 to conform to the definition of "disability" under ADA-AA. Both the Title V of the ADA and §504 of the Rehabilitation Act prohibit retaliation against persons with disabilities.

19.     Under 42 U.S.C.A. § 12181(7)(J), Defendant is considered a public accommodation despite it being a private entity. Additionally, under 42 U.S.C.A § 12189, Defendant "shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangement for such individuals."

20.     Defendant has its principal place of business in Fort Lauderdale, Florida, transacts business in this District, has subjected itself to this Court's jurisdiction through such activity, and a substantial part of the events and omissions giving rise to this claim occurred in this District. Accordingly, venue is proper in this District under 28 U.S.C. § 1391.

21.     This action is properly venued in the Tampa Division of the Middle District of Florida because Defendant is located within the division, and all of the events occurred within the division on KU's Lakeland campus.

22.      In accordance with 28 U.S.C. § 1367, this Court also has supplemental over Plaintiff's state law claims because these claims are related to the federal question claims listed above, and the state law claims are part of the same controversy as the federal claims.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

23.     In February 2019, Jasmine left her employment with the Hillsborough County Sheriff's Office to pursue a degree in nursing.

24.     Throughout the process of Jasmine's application to KU, Jasmine disclosed numerous honors indicating her high academic

potential. Such honors included graduating with High Honors for her Associate in Arts Degree from the College of Albemarle, her honorary membership of Phi Theta Kappa, the receipt of her teaching education credentials, and her recognition on the President's List.

25.     In March 2019, Jasmine enrolled in KU's ASN program. Jasmine began completing course requirements to begin working in the ASN program. Jasmine received 'A's in all of the prerequisite courses and was recognized multiple times on KU's Dean's list. Thereafter, Jasmine was informed by her academic advisor that KU was to begin offering an accelerated BSN program and that Jasmine was eligible to join the program. Jasmine was required to complete one more course prior to her enrollment in the program, which she had completed by December 2019. In January 2020, the BSN program began.

26.     Jasmine enrolled at KU after July 1st, 2016, and before July 1st, 2020, during which federal policy disallowed pre-dispute binding arbitration clauses for schools, such as KU, that participate in federal loan programs.

27.     Jasmine was elected Class President by her classmates. In this position, Jasmine was to relay communications between her classmates and their instructors.

28.     About a month after the beginning of the BSN program, Decker, one of Jasmine's professors, began to treat Jasmine poorly in class and in online communications. Some of the ways in which Jasmine was treated poorly by Professor Decker include:

      a)     Professor Decker's refusal to answer Jasmine's questions.

      b)     Professor Decker's failure to provide instruction or demonstration when requested in laboratory assignments.

      c)     Professor Decker's failure to provide information regarding the calculation of Jasmine's grades on assignments.

      d)     Professor Decker's in-class comments about the insufficiency of Jasmine's work product.

      e)     Professor Decker's requiring Jasmine to recomplete numerous assignments.

f)    Professor Decker's overt frustration towards Jasmine's apparent difficulties in completing the assignments in a satisfactory manner.

g)    Professor Decker's overly harsh and individualized grading manner.

29.    While Jasmine was dealing with Professor Decker's actions, she was contacted by a fellow student who confided his suicidal intentions to Jasmine. In response, Jasmine located the individual and managed to convince him not to convert his suicidal ideations into suicidal actions.

30.    Jasmine eventually realized that Professor Decker was not treating the other students in the class in a similar manner. As a result of this realization, Jasmine reached out to Decker to ascertain what Jasmine was doing wrong or to upset Professor Decker. Professor Decker responded that Jasmine was not doing anything wrong and that she just needed to do better and work harder.

31.    After this meeting, Jasmine continued to perform to the best of her ability to be successful in the program.

32.     Despite Jasmine's propensity for academic achievement, her grades in Professor Decker's course continued to suffer.

33.     As a result of the stress from Professor Decker's actions toward Jasmine and Jasmine's position as student President, Jasmine had an anxiety attack.

34.     After regaining her composure, Jasmine scheduled a meeting with Dean Trindle for March 5th, 2020. At this meeting, Jasmine, Dean Trindle, and Director Presto met to discuss Jasmine's concerns which included:

  a)     Jasmine's treatment relating to her laboratory skills.

  b)     Jasmine's needing more hands-on experience hours in the laboratory because of insufficient assistance from Professor Decker.

  c)     Jasmine's clinical experiences.

  d)     Jasmine's grading complications with Professor Decker.

35.     This March 5th, 2020, meeting is properly considered a reasonable request for accommodations to assist Jasmine in

overcoming the educational difficulties that had begun to arise because of Jasmine's stresses with Professor Decker.

36.     At the March 5th, 2020, meeting, Dean Trindle and Director Presto stated that they understood Jasmine's concerns and would be sure to handle her difficulties accordingly.

37.     About a week later, Jasmine was made aware that one of her classmates was experiencing homelessness and offered to assist this classmate until he was back on his feet.

38.     Around the same time, Professor Decker informed the class that they were going to be required to complete more hands-on laboratory work because some classmates complained that they were not getting the help that they needed. After informing the class of such, Professor Decker turned to glare at Jasmine. Immediately after this, the class took their scheduled exam, and Jasmine received a poor grade.

39.     Two weeks later, Professor Decker's class had a culture paper due. Professor Decker failed Jasmine's paper with a numeric grade of 60. After unsuccessfully attempting to discuss the matter with Professor Decker, Jasmine contacted Director Presto to relay her

concerns and request a meeting between Jasmine, Director Presto, and Professor Decker.

40.     At this meeting, Jasmine presented Director Presto with her paper, emails, concerns, complaints, and documentation about her interactions with Professor Decker. Director Presto reviewed Jasmine's paper and other documentation and found no fault with Jasmine's paper. Director Presto then informed Professor Decker that Jasmine's grade would have to be changed.

41.     After this meeting, Jasmine attempted to contact Professor Decker to express that she would hold no grudges against Professor Decker in the future and wished to start their relationship anew. Jasmine further contacted her classmates to discuss her worries which revealed that her classmates were not receiving the same mistreatment from Professor Decker.

42.     Jasmine further contacted her classmates to discuss her worries which revealed that her classmates were not receiving the same mistreatment from Professor Decker.  Despite there being no further issues between Professor Decker and Jasmine for the remainder of the semester, a few weeks into the second semester of

the program, Professor Decker started to repeat the complications of the prior semester.

43.     As Jasmine would submit the required documentation for her clinicals to Professor Decker, Professor Decker would then inform Jasmine that her paperwork was never received and would have to be resubmitted. Furthermore, as Jasmine would submit her nurse's notes and concept maps, Professor Decker would routinely tell Jasmine her work was not correct but would not inform Jasmine as to why. Then, after resubmitting her work in accordance with what little insight Professor Decker would provide, Jasmine would be told yet again that her work was insufficient.

44.     As Professor Decker continued to require Jasmine to submit and resubmit her work, Jasmine reached out to her classmates once again to see if they were having similar issues. Jasmine's classmates stated that they had not been treated as Jasmine had been. In fact, one of Jasmine's classmates informed her that Professor Decker replied to an assignment without proper documentation of timeframes stating to remember to include them

next time. Despite the improper documentation, Professor Decker still gave the student a grade of 100%.

45.      As Jasmine continued to strive for academic excellence, she began to stay up until 4 AM every morning to meet her responsibilities.

46.      At some point in time, Jasmine's youngest daughter fell ill. As a result, Jasmine had to spend significant amounts of time taking her to the pediatrician in lieu of studying for a quiz in Professor Decker's course. On the morning before the quiz, Jasmine had to take her daughter to the emergency room. As Professor Decker's quiz was later that morning and Jasmine was worried about her preparedness given her family health emergency, Jasmine reached out to Professor Decker to explain the situation at hand. A few days after this, Professor Decker restarted her campaign of forcing Jasmine to resubmit work.

47.      One important assignment for passing Professor Decker's class was a proctored online exam. All of the 24 students in the program were required to take the exam concurrently, were not allowed to mute their microphones, were not allowed to leave the

view of the camera and were not to make any noise. Despite being warned of these rules, numerous students talked throughout the exam, classmates' dogs were barking, and not once did Professor Decker, the exam's proctor, intervene to address the rule breaking. As a result of the test-taking environment, Jasmine scored a grade in the 60's on the test.

48.    Immediately after the exam, Jasmine contacted Professor Decker via telephone and relayed her concerns with the exam. As Professor Decker was unhelpful, Jasmine proceeded to contact Director Presto to relay her concerns. Director Presto informed Jasmine that she would watch the video record of the exam later that afternoon and would address Jasmine's concerns.

49.    After this discussion with Director Presto, Jasmine was given a grade of 50 on the exam, causing her grade to drop a whole letter grade.

50.    Director Presto never got back in contact with Jasmine regarding the matter.

51.    A few days later, Professor Decker sent Jasmine an email stating that she had to sign and return a form in order to attempt

the exam a second time. This form contained a statement that implied the exam was to be recompleted because of a failure to achieve on the first attempt. Having concerns for this file's placement in her records and the contributing factors of the exam that led to the poor grade, Jasmine informed Professor Decker that she was not comfortable signing the form. In response, Professor Decker said that she would document Jasmine's communication as a refusal and forward the information to the program director. Jasmine never heard from anyone regarding this matter.

52.     Shortly thereafter, Professor Gentry, a friend who maintains regular communication with Professor Decker, began taking away nearly 20 points every week on Jasmine's weekly drug discussion boards. Professor Gentry explained to Jasmine that she had done so because Jasmine's responses contained too much information. Upon seeking a further explanation, Jasmine was informed by Professor Gentry that Jasmine had failed to turn in two of the weekly submissions despite Jasmine having done so.

53.     Several of Jasmine's classmates indicated to Jasmine that they have turned in their assignments late or have turned in

assignments with scant information and still received great grades. In response to learning this information, Jasmine reached out to Professor Gentry to seek a resolution to the grading issue and to seek an explanation as to why Jasmine was being treated adversely despite her completion of assignments in line with the written instructions. Professor Gentry never responded.

54.    All the while, Professor Decker was continuing to require Jasmine to submit and resubmit work while also creating new work for Jasmine to complete.

55.    As these complications continued, so did the deterioration of Jasmine's wellbeing, which was beginning to take a toll on her family as well.

56.    On August 11th, 2020, Jasmine attended a simulation day on campus. In the first class, hosted by Professor Gentry, Jasmine had no issues. However, during the second class, hosted in part by Professor Decker, issues arose when Professor Decker shot down every contribution Jasmine had to the collaborative conversation that Professor Decker was facilitating among the students. After the collaborative conversation, the group began to work on the

assignments. Jasmine asked her group members to review her assignment as she had issues with past graded assignments. Jasmine's group members could not find anything wrong with the paperwork Jasmine had completed. In fact, one group member stated that Jasmine included more information than they did.

57.     Two days after Jasmine submitted her assignment, on the night before the second simulation assignment, Professor Decker informed Jasmine that her submission was wrong and that she would need to resubmit them. Additionally, Jasmine would need to make nurse's notes with patient assessments included during each simulation day in addition to the work already scheduled for the day.

58.     In response to this information, Jasmine could not sleep that night because of everything that Professor Decker had put her through.

59.     The next day, Jasmine was informed that her group would be starting the second simulation in Professor Decker's room. As soon as Jasmine entered the room, a wave of anxiety, sadness, fear, and anger overcame her all at once, and she began to have a panic

attack. Jasmine stated that she had to use the restroom and hurried out of the room.

60.     After attempting to calm herself down with little success, Jasmine attempted to contact Dean Trindle to communicate her concerns with the simulation. Jasmine was unable to get in contact with Dean Trindle and communicated her concerns with Mrs. Cavanaugh. Mrs. Cavanaugh informed Jasmine that she would relay the information to Dean Trindle and Director Presto and that someone would get back in touch with her by the end of the day.

61.     Shortly after returning to her home, Jasmine received a message from Director Presto inviting her to an online meeting that afternoon. This meeting was recorded for video by Director Presto and for audio by Director Presto and Jasmine. Throughout the meeting, Director Presto made multiple demeaning comments to Jasmine and devalued Jasmine's character and morals. Director Presto also indicated that she and Professor Decker were friends and that Professor Decker would not act in such a manner.

62.     Director Presto informed Jasmine that she would be required to make up the simulation that she had missed. Upon hearing this,

Jasmine asked if she could have another instructor in lieu of Professor Decker for the simulation and exam. Director Presto stated that she was unwilling to do this, and that Jasmine would have to deal with Professor Decker for the entirety of the BSN program. Upon hearing this, Jasmine began to have another panic attack and left the meeting.

63.     By failing to provide Jasmine the reasonable accommodation to take her exams and simulation courses with another instructor instead of Professor Decker, Director Presto broke federal law.

64.     As she felt unable to escape the abuse of Professor Decker, Jasmine officially withdrew her enrollment in KU on August 24th, 2020. The last day that she attended campus was August 13th, 2020.

65.     Under Florida law, an employer may be held vicariously liable for compensatory damages arising from the actions of its employee under the doctrine of respondeat superior if the employee was acting within the scope of his employment when he committed the tortious act.

66.     Throughout her experience at KU, Jasmine spent a significant amount of money, took out numerous student loans, has

dedicated countless hours away from her family as she worked every day of the week with almost no stopping, ended her previous employment and career, and developed numerous health complications ranging from increases in symptoms of her PTSD, headaches, and stomach issues.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Failure to Accommodate under Title III of the ADA
### (Against Defendant KU)

67.    Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

68.    Upon information and belief, KU is a private school receiving federal funds. It is subject to the Americans with Disabilities Act because the Act defines a public accommodation as an "[…] elementary, secondary, undergraduate, or postgraduate private school". 42 USCA § 12181 (7)(J).

69.    Under ADA, a person is a qualified individual if she is "an individual who, with or without reasonable accommodation, can perform the essential functions or meet the essential requirements

of the program in which [she] participates or in which [she] desires to participate.'"

70.     Given Jasmine's propensity to succeed in classes at KU and outside of KU, and Director Presto and her classmate's inability to find fault with Jasmine's work product, it is clear that she could perform the essential functions and exceed the requirements of the BSN program with reasonable accommodations.

71.      As Jasmine was unable to sleep or adequately learn in her classes due to the complications of her PTSD, it is clear that her mental impairment substantially limits one or more of Jasmine's major life activities.

72.     Defendant KU had a duty to provide Jasmine with proper accommodations reflective of her significant disability. At all relevant times, Defendant KU was aware of Jasmine's disability.

73.     At all relevant times, Program Director Kimberly Presto was employed by Defendant KU.

74.     When Jasmine asked Director Presto if another professor could proctor her exams and simulations, Jasmine requested KU

for a reasonable accommodation for her PTSD that would pose very little hardship on the BSN program.

75.     When Director Presto denied Jasmine's reasonable accommodation request on behalf of KU, Director Presto acted unreasonably given her participation in numerous discussions about Jasmine and Professor Decker's relationship, and Director Presto's and Dean Trindle's insistence that they would handle the issue.

76.     Through the actions of Director Presto, KU discriminated against Jasmine when Director Presto was deliberately indifferent to Jasmine's reasonable request for an accommodation for her PTSD by asking if a professor other than Defendant Decker could proctor her exams and simulations.

77.     As a direct and proximate result of KU's unlawful discrimination, Jasmine has sustained and will continue to sustain injuries and damages.

## SECOND CAUSE OF ACTION
## Violation of Section 504 of the Rehabilitation Act
## (Against Defendant KU)

78.     Plaintiff adopts by reference the preceding Factual Allegations (¶¶ 23-66).

79.     Upon information and belief, KU is a private university receiving federal funding and is therefore subject to Section 504 of the Rehabilitation Act of 1973.

80.     As Jasmine suffers from PTSD, which affects her sleeping and ability to learn, Jasmine has a disability under the ADA and the Rehabilitation Act.

81.     Despite Jasmine's academic abilities qualifying her for KU's BSN program, Jasmine was discriminated against when KU denied her the benefits of the BSN program by not providing reasonable accommodations to meet Jasmine's needs and thus, denied Jasmine the equal opportunity to receive an education as a student without a disability.

82.     As a direct and proximate result of KU's unlawful discrimination, Jasmine has sustained and will continue to sustain injuries and damages.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of Title V of the ADA.
### (Against Defendant KU)

83.     Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

84.     Upon information and belief, KU is a private school receiving federal funds. It is subject to the Americans with Disabilities Act because the Act defines a public accommodation as an "[…] elementary, secondary, undergraduate, or postgraduate private school". 42 USCA § 12181 (7)(J).

85.     At all relevant times, Professor Brooke Decker, Professor Amberlyn Gentry, Dean Harold Trindle, and Program Director Kimberly Presto, were employed by Defendant KU.

86.     As a professor for KU, Professor Decker retaliated against Jasmine's statutorily protected activity of seeking a reasonable accommodation for her disability when Professor Decker began to treat Jasmine poorly because Jasmine had requested more hands-on laboratory assistance.

87.     As a professor for KU, Professor Decker further retaliated against Jasmine when Professor Decker continued to treat Jasmine

poorly when Jasmine would seek an explanation for Professor Decker's actions and further protections from Defendants Trindle and Presto.

88.    As a professor for KU, Professor Gentry retaliated against Jasmine for her seeking a reasonable accommodation when Professor Gentry began to arbitrarily reduce the number of points Jasmine would receive on assignments because of her seeking of accommodations in Professor Decker's class.

89.    As a director for KU, Director Presto retaliated against Jasmine's seeking of reasonable accommodation for her PTSD when Director Presto told Jasmine that not only would Jasmine be required to take her exams and simulations with Professor Decker, but that she would be required to deal with Professor Decker for the entirety of the BSN program.

90.    Through the actions of Professor Decker, Professor Gentry, and Director Presto, KU retaliated against Jasmine for seeking a reasonable accommodation for her PTDS disability, in violation of Title V of the ADA.

## FOURTH CA
## USE OF ACTION
## Retaliation in Violation of Section 504 Rehabilitation Act
## (Against Defendant KU)

91.     Plaintiff adopts by reference the preceding Factual Allegations (¶¶ 23-66).

92.     Upon information and belief, KU is a private university receiving federal funding and is therefore subject to Section 504 of the Rehabilitation Act of 1973.

93.     At all relevant times, Professor Brooke Decker, Professor Amberlyn Gentry, Dean Harold Trindle, and Program Director Kimberly Presto, were employed by Defendant KU.

94.     As a professor for KU, Professor Decker retaliated against Jasmine's statutorily protected activity of seeking a reasonable accommodation for her disability when Professor Decker began to treat Jasmine poorly because Jasmine had requested more hands-on laboratory assistance.

95.      As a professor for KU, Professor Decker further retaliated against Jasmine when Professor Decker continued to treat Jasmine poorly when Jasmine would seek an explanation for Professor

Decker's actions and further protections from Defendants Trindle and Presto.

96.     As a professor for KU, Professor Gentry retaliated against Jasmine for her seeking a reasonable accommodation when Professor Gentry began to arbitrarily reduce the number of points Jasmine would receive on assignments because of her seeking of accommodations in Professor Decker's class.

97.     Through the actions of Professor Decker, Professor Gentry, and Director Presto, KU retaliated against Jasmine for seeking a reasonable accommodation for her PTDS disability, in violation of Section 504 of the Rehabilitation Act.

## FIFTH CAUSE OF ACTION
## Interference in Violation of Title III of the ADA
## (Against Defendant KU)

98.     Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

99.     Upon information and belief, KU is a private school receiving federal funds. It is subject to the Americans with Disabilities Act because the Act defines a public accommodation as an "[…]

elementary, secondary, undergraduate, or postgraduate private school". 42 USCA § 12181 (7)(J).

100.     At all relevant times, Professor Brooke Decker, Professor Amberlyn Gentry, Dean Harold Trindle, and Program Director Kimberly Presto, were employed by Defendant KU.

101.     As a professor for KU, Professor Decker interfered with Jasmine's exercise and enjoyment of her ability to request reasonable accommodations for her PTSD when Professor Decker made Jasmine resubmit work that was previously submitted, complete additional assignments, graded Jasmine harshly, humiliated Jasmine in front of her peers through in-class comments, and force Jasmine to sign a release stating that she had failed her exam prior to allowing her to retake it.

102.     As a professor for KU, Professor Gentry interfered with Jasmine's exercise and enjoyment of her ability to request reasonable accommodations for her PTSD when Professor Gentry began to harshly grade Jasmine because of her seeking of accommodations in Professor Decker's course.

103.    As a director for KU, Director Presto interfered with Jasmine's exercise and enjoyment of her ability to request reasonable accommodations for her PTSD when Director Presto failed to accommodate Jasmine's retaking of her exam and simulations with another professor. Director Presto failed to respond to Jasmine's allegations of impropriety, condemned and criticized Jasmine for bringing her concerns about Professor Decker to Director Presto's attention, and failed to inform her superiors about the actions of Professor Decker and Professor Gentry.

104.    As a dean of KU, Dean Trindle interfered with Jasmine's exercise and enjoyment of her ability to request reasonable accommodations for her PTSD when Dean Trindle failed to respond adequately to the allegations made by Jasmine, failed to inform their superiors about the actions of Professor Decker and Professor Gentry, and failed to accommodate the needs of Jasmine and her PTSD.

105.    Through the actions of Professor Decker, Professor Gentry, Director Presto, and Dean Trindle, KU interfered with Jasmine's

exercise and enjoyment of her ability to request reasonable accommodations for her PTSD, in violation of Title III of the ADA.

## SIXTH CAUSE OF ACTION
### Interference in Violation of Section 504
### of the Rehabilitation Act
### (Against Defendant KU)

106.   Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

107.   Upon information and belief, KU is a private university receiving federal funding and is therefore subject to Section 504 of the Rehabilitation Act of 1973.

108.   At all relevant times, Professor Brooke Decker, Professor Amberlyn Gentry, Dean Harold Trindle, and Program Director Kimberly Presto, were employed by Defendant KU.

109.   As a professor for KU, Professor Decker interfered with Jasmine's exercise and enjoyment of her ability to request reasonable accommodations for her PTSD when Professor Decker made Jasmine resubmit work that was previously submitted, complete additional assignments, graded Jasmine harshly, humiliated Jasmine in front of her peers through in-class

comments, and force Jasmine to sign a release stating that she had failed her exam prior to allowing her to retake it.

110.    As a professor for KU, Professor Gentry interfered with Jasmine's exercise and enjoyment of her ability to request reasonable accommodations for her PTSD when Professor Gentry began to harshly grade Jasmine because of her seeking of accommodations in Professor Decker's course.

111.    As a director for KU, Director Presto interfered with Jasmine's exercise and enjoyment of her ability to request reasonable accommodations for her PTSD when Director Presto failed to accommodate Jasmine's retaking of her exam and simulations with another professor. Director Presto failed to respond to Jasmine's allegations of impropriety, condemned and criticized Jasmine for bringing her concerns about Professor Decker to Director Presto's attention, and failed to inform her superiors about the actions of Professor Decker and Professor Gentry.

112.    As a dean for KU, Dean Trindle interfered with Jasmine's exercise and enjoyment of her ability to request reasonable accommodations for her PTSD when Dean Trindle failed to respond

adequately to the allegations made by Jasmine, failed to inform their superiors about the actions of Professor Decker and Professor Gentry, and failed to accommodate the needs of Jasmine and her PTSD.

113.     Through the actions of Professor Decker, Professor Gentry, Director Presto, and Dean Trindle, KU interfered with Jasmine's exercise and enjoyment of her ability to request reasonable accommodations for her PTSD, in violation of Section 504 of the Rehabilitation Act.

## SEVENTH CAUSE OF ACTION
### Breach of Contract
### (Against Defendant KU)

114.     Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

115.     When Jasmine enrolled at KU, Jasmine entered a contract with KU. In return for monetary payment, Defendant KU was to provide Jasmine with a quality education subject to the terms and conditions created by KU. This contract requires that all members of the KU academic community "share responsibility for

establishing, implementing and evaluating its educational programs."[3] Furthermore, KU was to "develop and maintain" educational programs that are "responsive to … student needs" while retaining quality faculty that "evidence an interest in, and proclivity for, engaging students, addressing learning and developmental challenges, and responding to the needs of a broad spectrum of University students."[4]

116.    KU breached this contract with Jasmine when it failed to provide adequate accommodations to respond to her needs. This occurred when Director Presto denied Jasmine's reasonable request for accommodations to take exams with a different professor due to her PTSD and negative experiences with Professor Decker. Additionally, KU breached this contract when its employees failed to address the learning challenges created by their faculty and failed to attempt to rectify those challenges. This breach resulted in Jasmine being denied the education which she had agreed to

---

[3] https://www.keiseruniversity.edu/wp-content/uploads/catalogs/KEISER UNVIERSITY-Undergraduate-Catalog.pdf at 15.
[4] *Id* at 15-16.

receive, becoming saddled in student loan debt, and being unable to pursue her career at a different school.

117.    As a result of KU's breaches of the contract, Jasmine is entitled to compensatory damages and restitution in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Breach of Duty of Good Faith and Fair Dealing
### (Against Defendant KU)

118.    Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

119.    Plaintiff entered into a consumer transaction with Defendant KU for the purchase of services intended and represented to be subjected to the strategic directions and goals of KU.

120.    Every consumer transaction imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.

121.    Under the contract, Jasmine has performed all of the conditions required of her under the transaction.

122.    Defendant KU knew or should have known that the BSN program offered by KU at the Lakeland campus did not uphold the

conditions required of them on their end of the contractual agreement, which resulted in a lower quality program with less than adequate protections for disabled individuals.

123.    Defendant's conduct, as alleged above, constitutes a breach of its duty of good faith and fair dealing, in that, among other things, it fraudulently induced Jasmine to enroll in their BSN nursing program, which KU claimed would follow the standards outlined in the contract when it knew or should have known that the program would not actually do so.

124.    As a result of KU's conduct and/or the conduct of their employees, Jasmine has been damaged by an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### Breach of Express Warranties
### (Against Defendant KU)

125.    Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

126.    At all relevant times, Defendant KU expressly warranted that the programs and services paid for by Plaintiff throughout the

duration of the BSN program would be subject to the rights and responsibilities outlined in KU's strategic directions and goals through their website and their undergraduate catalog.

127.     Defendant, to induce sales, made certain express warranties and representations to Jasmine, both orally and in writing (including, but not limited to, statements made on KU's website, by KU employees to Jasmine, and statements in their undergraduate catalog) and through their conduct.

128.     Defendant KU systematically misrepresented the programs and services provided by KU. Defendant acted with knowledge that the program and services provided in the BSN program were not following the warranties and representations made by KU. By so acting, KU approved of and adopted the misrepresentations in the programs and services provided to Jasmine.

129.     Defendant KU knew and expected, or should have known, expected, and intended Plaintiff to rely on Defendant KU's warranties.

130.     The representations contained or constituted affirmations of fact or promises made by Defendant KU to Plaintiff related to the

programs provided, and thus the affirmations of fact or promises became part of the basis of the bargain, creating an express warranty that the program shall conform to the affirmations of fact or promises.

131.     In determining to enroll in KU's BSN program, Plaintiff reasonably relied on the representations and express warranties of Defendant KU.

132.     Because Defendant's BSN program did not conform to Defendant's express representation, Defendant breached the warranties.

133.     As a foreseeable, direct, and proximate result of the breach of express warranties by Defendant KU, Plaintiff suffered injuries and damages as alleged herein.

## TENTH CAUSE OF ACTION
### Negligent Misrepresentation
### (Against Defendant KU)

134.     Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

135.     Defendant had a duty to provide honest and accurate information to its customers so that customers could make informed

decisions on their determination to enroll in programs offered by KU.

136.     Defendant specifically and expressly misrepresented material facts as to how the program would be operated and how the conduct of their employees would be evaluated.

137.     Defendant knew, or in the exercise of reasonable diligence, should have known that the ordinary and reasonable consumer would have been misled by KU and their employees' misleading and deceptive representations.

138.     Defendant was aware that the strategic directions and goals of KU, as outlined on their website and in their undergraduate catalog, were not an accurate depiction of the processes employed by KU.

139.     In determining to enroll with KU, Jasmine justifiably relied on Defendant's misrepresentations as to the strategic directions and goals of KU and their programs and has thereby been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION
### Deceptive and Unfair Trade Practices
### Fla. Stat. §501.201
### (Against Defendant KU)

140.     Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

141.     By holding itself out as a university that puts students first in its many program offerings and holds its employees accountable to maintaining educational programs that are responsive to a wide range of student needs, KU made intentional misrepresentations about the true nature of its BSN program.

142.     Despite multiple efforts to request accommodations for anxiety, KU administrators took no action.

143.     On March 5, 2020, Jasmine met with Dean Trindle, and Director Presto to discuss Jasmine's concerns with class performance due to anxiety based on Jasmine's PTSD.

144.     This meeting is properly considered a reasonable request for accommodations to assist Jasmine in overcoming the educational difficulties that had begun to arise because of Jasmine's stresses with Professor Decker.

145.    Despite Dean Trindle and Director Presto stating that they understood Jasmine's concerns and would be sure to handle her difficulties accordingly, no accommodations were made to accommodate her PTSD.

146.    Further, after receiving a grade in the 60's on an online proctored exam in distracting conditions, Jasmine contacted Director Presto and relayed her concerns with the exam.

147.    Director Presto informed Jasmine that she would watch the video record of the exam later that afternoon and would address Jasmine's concerns.

148.    After this discussion with Director Presto, Jasmine was given a grade of 50 on the exam, causing her grade to drop a whole letter grade, and Director Preston never reached back out to Jasmine regarding the matter.

149.    Professor Decker's abusive behavior triggered Jasmine's PTSD and caused her to have a panic attack and be overcome with a wave of anxiety, sadness, fear. After this episode, Jasmine attempted to contact Dean Trindle to communicate her concerns with the simulation.

150.     Shortly after returning to her home, Jasmine received a message from Director Presto inviting her to an online meeting that afternoon. This meeting was recorded for video by Director Presto and for audio by Director Presto and Jasmine.

151.     Throughout the meeting, Director Presto made no effort to put in place reasonable accommodations for Jasmine. Instead, Director Presto made multiple demeaning comments to Jasmine and devalued Jasmine's character and morals. Director Presto also indicated that she and Professor Decker were friends and that Professor Decker would not act in such a way.

152.     Director Presto informed Jasmine that she would be required to make up the simulation that she had missed. Upon hearing this, Jasmine asked if she could have another instructor in lieu of Professor Decker for the simulation and exam. Director Presto stated that she was unwilling to do this, and that Jasmine would have to deal with Professor Decker for the entirety of the BSN program. Upon hearing this, Jasmine began to have another panic attack and left the meeting.

153.    Furthermore, by failing to fulfill their obligation to provide reasonable accommodations for students with disabilities, such as Jasmine, KU usurps public policy to not discriminate against the disabled. In doing so, KU has caused significant damages to their disabled students.

154.    KU induced disabled students to attend KU by falsely representing that KU would provide accommodations. By refusing to provide the accommodations as required by law and based on KU's express promise to support disabled students, KU engaged in a deceptive and unfair trade practice

155.    As a result of KU's deceptive and unfair trade practices, Jasmine is entitled to the full dollar amount that Jasmine paid in tuition to Kaiser while she was a student at Kaiser with the specific value to be determined at a later stage in litigation.   Further, Jasmine is entitled attorney's fees of a value to be determined at trial.

## TWELFTH CAUSE OF ACTION
### Unjust Enrichment
### (Against Defendant KU)

156.    Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

157.    Plaintiff conferred a benefit on KU by enrolling in KU's BSN program and remitting payment to KU for enrollment.

158.    KU knew that Plaintiff had conferred a benefit upon it.

159.    Because of its wrongful acts and omissions, Defendant provided inadequate support services despite promising otherwise throughout Plaintiff's enrollment at KU, and Defendant received money that rightfully belongs to Plaintiff.

160.    As KU has been unjustly enriched at the expense of the plaintiff and its retention of this benefit would be inequitable under the circumstances, Plaintiff seeks an order requiring Defendant to make restitution to her.

## THIRTEENTH CAUSE OF ACTION
### Negligence
### (Against Defendants Decker, Gentry, Presto, Trindle, and KU)

161.    Plaintiff adopts, by reference, the preceding Factual Allegations (¶¶ 23-66).

162.    Defendants Decker, Gentry, Presto, Trindle, and KU were negligent in performing their duties and failed, neglected, and/or refused to properly and fully discharge their duties by, among other things:

    a)    Failing to recognize Jasmine's need for accommodations for her learning disability due to her PTSD.

    b)    Failing to properly review Jasmine's needs for accommodations for her learning disability due to her PTSD.

    c)    Failing to provide Jasmine with proper accommodations for her learning disability due to her PTSD.

    d)    Creating and/or sanctioning policies, patterns, practices, and customs of not providing reasonable accommodations to those with learning disabilities.

e)     Failing to adequately train and supervise KU personnel to properly evaluate and provide reasonable accommodations to those with learning disabilities.

163.    By their negligent conduct, the Defendants Decker, Gentry, Presto, Trindle, and KU have inflicted extreme and severe emotional distress on Plaintiff, who is confronted with an inability to complete her education, practice her chosen profession, earn a living, provide for her family, and to pay her mounting student loan debts—resulting in significant financial losses due to KU's aforementioned conduct. Additionally, Plaintiff has suffered a worsening of her PTSD symptoms which has affected her personal wellbeing and her interpersonal relationships.

164.    When Dean Trindle and Director Presto learned of Professor Decker's actions towards Jasmine, Defendant KU was put on constructive notice of Professor Decker's fitness for employment. Furthermore, KU, either through its own inaction or the actions of its employees Dean Trindle and Director Presto, failed to reasonably investigate the numerous complaints that Jasmine

brought to their attention and failed to reassign Professor Decker to another classroom.

165.    Since Director Presto and Dean Trindle oversee the BSN program, meeting with students to address difficulties with professors is naturally within the scope of the duties of their employment. Additionally, the BSN program instructed Jasmine, in particular, to bring issues that her fellow classmates may have because she was elected class president. Thus, the torts committed by Director Presto and Dean Trindle occurred when they were acting within the scope of their employment at KU, and Defendant KU can be held vicariously liable for the compensatory damages that arise from any of the tortious acts committed by Director Presto and Dean Trindle during their conversations with Jasmine.

166.    The growing emotional, psychological, and physical distress that Plaintiff has suffered was caused directly and proximately by the negligent conduct of Defendants Decker, Gentry, Presto, Trindle, and KU. Furthermore, Plaintiff suffers and continues to suffer financial losses due to Defendants' negligent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant them relief as follows:

    (1) Compensatory damages for financial loss, humiliation, mental anguish, and emotional distress;

    (2) Punitive damages against Defendants Decker, Gentry, Presto, Trindle, and KU;

    (3) Attorneys' fees;

    (4) Costs of the suit;

    (5) Injunctive relief; and

    (6) Such other relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this action.

| Dated: December 13, 2021 | Respectfully Submitted,<br>By: /s/ Keith Altman<br>Keith Altman (*pro hac vice*)<br>The Law Office of Keith Altman<br>33228 West 12 Mile Road, Suite 375<br>Farmington Hills, MI 48334<br>Telephone: (248) 987-8929<br>keithaltman@kaltmanlaw.com<br>*Attorney for Plaintiff* |
|---|---|

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 13, 2021, I electronically filed the foregoing THIRD AMENDED COMPLAINT with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel.

/s/ Keith Altman