UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:21-cv-00318-MSS-JSS

JASMINE HUNGERMAN,

     Plaintiff,

v.

KEISER UNIVERSITY; PROFESSOR
BROOKE DECKER; PROFESSOR
AMBERLYN GENTRY; DEAN
HAROLD TRINDLE; PROGRAM
DIRECTOR KIMBERLY PRESTO; and
DOES 1-100,

     Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants KEISER UNIVERSITY, PROFESSOR BROOKE DECKER, PROFESSOR AMBERLYN GENTRY, DEAN HAROLD TRINDLE, and PROGRAM DIRECTOR KIMBERLY PRESTO ("Defendants"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Case Management and Scheduling Order [D.E. #49], move this Court for entry of an Order granting Summary Judgment in favor of Defendants on Plaintiff's Third Amended Complaint [D.E. #40], submit the following Motion for Summary Judgment, and in support thereof, state as follows:

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

## STATEMENT OF MATERIAL FACTS

1.      Jasmine Hungerman began taking classes on Keiser University's ("Keiser") Lakeland Campus in March 2019 in the Associate Science in Nursing Program ("ASN").  Deposition Transcript of Jasmine Hungerman at pp. 28 (lines 22-25)-29 (lines 1-2), attached hereto as **"Exhibit A"**.

2.      Prior to completing the ASN program, Plaintiff moved into the Bachelor of Science in Nursing Program ("BSN") in January 2020.  **Exhibit A** at p. 29 (lines 3-10)

3.      Brooke Decker and Amberlyn Gentry were professors of the Plaintiff in the BSN program.  **Exhibit A** at pp. 29 (lines 14-18), 32 (lines 1-4).

4.      Kimberly Presto was the director of the BSN program at the Lakeland Campus while Plaintiff attended Keiser.  **Exhibit A** at p. 32 (lines 19-21).

5.      Harold Trindle was Dean of the BSN program while Plaintiff attended Keiser.  **Exhibit A** at p. 32 (lines 11-18)

6.      Plaintiff voluntarily withdrew from Keiser on August 24, 2020.  **Exhibit A** at pp. 210 (lines 11-25)-211 (lines 1-7).

7.      Prior to starting the BSN program Plaintiff acknowledged that she read the performance requirements and essential job functions of a graduate nurse, understood the nature of the demands, and was able to perform them "WITHOUT reasonable accommodation".  **Exhibit A** at pp. 91 (lines 17-25), 92

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

(lines 1-25), 93 (lines 1-25), 94 (lines 1-5); executed accommodation form, attached hereto as **"Exhibit B"**.

8.      If Plaintiff wished to make a request for an accommodation due to a disability during the program, Keiser University's Accessibility Guide sets forth the procedure and documentation required from the student.  Keiser University Accessibility Guide, attached hereto as **"Exhibit C",** at pp. 4, 7-8, 21, 32-33; Deposition Transcript of Karen Steverson at pp. 30 (lines 22-25)-31 (lines 1-11), attached hereto as **"Exhibit D"**.

9.      The student is required to fill out a Request for Adjustments/Accommodations Form with adequate documentation from an appropriately licensed professional which sets forth how the disability limits the student's ability to participate in an academic setting and clearly outlines the accommodation or academic adjustment requested, which is reviewed by an Accommodations Review Committee that either grant or denies the request. **Exhibit C** at pp. 4, 7-8, 21, 32-33; **Exhibit D** at pp. 31 (lines 19-25), 32 (lines 1-25), 33 (lines 1-8).  Plaintiff had available to her the procedure to request an accommodation at any point during her tenure at Keiser.  **Exhibit C** at pp. 4, 7-8, 21, 32-33.

10.      Plaintiff admittedly failed to submit both a Request for Adjustments/Accommodations Form and any documentation from a medical

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

provider that she needed an accommodation due to a disability.  **Exhibit A** at p. 151 (lines 10-19).

11.    Plaintiff claims that she made a request for a reasonable accommodation during a Zoom meeting with Kimberly Presto.  **Exhibit A** at pp. 88 (lines 5-18, 22-25), 89 (lines 1-25), 90 (lines 1-25), 91 (lines 1-16).

12.    Plaintiff testified that her accommodation request to Ms. Presto was to have another instructor proctor tests and simulations because she felt "unsafe" around Brooke Decker.  **Exhibit A** at p. 90 (lines 10-17).

13.    During the recorded Zoom meeting with Ms. Presto, Plaintiff stated "I do not feel comfortable being around Ms. Decker" and if she was going to come in Tuesday and Thursday the Plaintiff needed "to be around a different instructor."  Video of Zoom meeting file name zoom_0(1) (2).mp4 at 46:50-48:05.[1]

14.    Ms. Decker was assigned specifically to teach her field of expertise and there was not an alternate or second instructor to teach her class.  **Exhibit D** at pp. 43 (lines 21-24), 44 (lines 1-25), 45 (lines 1-19).

15.    Plaintiff testified that she was retaliated by Ms. Decker in April 2020 after Plaintiff met with Mr. Trindle and Ms. Presto about issues with Ms. Decker

---

[1] Defendants cannot upload a video to CM/ECF as an exhibit to this Motion.  As a result, on March 14, 2023 Defendants filed an unopposed Motion to Submit Video in Support of Defendants' Motion for Summary Judgment by Alternative Means [D.E. #56] which is pending before this Honorable Court.  Defendants will submit the video for the Court's review in the manner instructed by the Court in its order on the Motion.

failing Plaintiff on a paper.  **Exhibit A** at pp. 42 (lines 12-23), 67 (lines 3-25), 68 (ln. 1-4), 69 (lines 20-25), 70 (lines 1-19).

16.     Plaintiff testified that when she asked for help going to Ms. Presto or Mr. Trindle she felt Ms. Decker retaliated against her by making her grades worse, changing grades, increasing workloads, making her redo assignments, giving her more assignments, telling her she did not turn in assignments when she did and had to resubmit, comments made in class, and refusing to help her.  **Exhibit A** at pp. 70 (lines 13-25)-71 (lines 1-7).

17.     Plaintiff testified that Ms. Gentry retaliated against her for having meetings with Ms. Presto and Mr. Trindle wherein she complained that Ms. Gentry would get agitated when Plaintiff would convey student concerns to Ms. Gentry.   **Exhibit A** at pp. 104 (lines 1-25), 105 (lines 1-23), 126 (lines 2-8).

18.     Plaintiff generally identified the alleged breach of contract as to documents she signed for enrollment during registration along with her financial documents.  **Exhibit A** at p. 152 (lines 9-12).

19.     Plaintiff identifies the terms of the documents that were allegedly breached as providing an education and providing an education in a safe environment.  **Exhibit A** at p. 152 (lines 13-18).

20.     Plaintiff's claims for breach of the duty of good faith and fair dealing, breach of express warranties, and negligent misrepresentation relate to

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

representations and warranties allegedly made by Keiser.  **Exhibit A** at p. 153 (lines 10-20).  Specifically, Plaintiff claims that Keiser represented that Plaintiff's courses would all be transferable, and that she would be guaranteed a position when she graduated.  **Exhibit A** at pp. 153 (lines 10-20), 156 (lines 5-11).

21.    Plaintiff electronically executed an Enrollment Verification Form where she acknowledged that she was told that Keiser **cannot** guarantee employment and **cannot** guarantee transferability of credits.  *See* Enrollment Verification Form, attached hereto as **"Exhibit E"** at questions 15 & 17.

22.    When Plaintiff inquired into transferring to another university, the schools informed Plaintiff that they had issues with her GPA and she never applied to any schools.  **Exhibit A** at pp. 213 (lines 4-25), 214 (lines 1-25), 215 (lines 1-3).

23.    While Plaintiff paid tuition, Keiser provided educational courses wherein if Plaintiff earned a passing grade Plaintiff earned credits toward a degree.  See Plaintiff's transcript, attached hereto as **"Exhibit F"**.  In exchange for the tuition paid, Defendant provided education services which resulted in Plaintiff earning 40 college credits from Keiser.  **Exhibit F.** [2]

---

[2] Other credits noted on Plaintiff's transcript were transferred from a prior institution.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

24.    Plaintiff claims that Ms. Decker and Ms. Gentry were negligent because they did not provide Plaintiff with a proper education.  **Exhibit A** at pp. 102 (lines 13-25)-103 (lines 1-7); 127 (lines 7-23).

26.    Plaintiff claims Ms. Presto and Mr. Trindle were negligent for not stopping the issues Plaintiff was having with Ms. Decker and Ms. Gentry.  **Exhibit A** at p. 142 (lines 13-24), 148 (lines 9-25)-149 (lines 2-5).

## MEMORANDUM OF LAW

### I.    Legal Standard

"The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  Lockheed Martin Corp. v. Galaxis USA, Ltd., 222 F.Supp.2d 1315, 1322 (M.D. Fla. 2022), *aff'd sub nom.*, 88 F.App'x 389 (11th Cir. 2003).  "A moving party discharges its burden on a motion for summary judgment by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case."  Id. (*quoting* Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

"The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no **genuine** issue of **material** fact."  Cluck-U Chicken, Inc. v. Cluck-U Corp., 358 F.Supp.3d 1295, 1303 (M.D. Fla. 2007) (internal quotation omitted)

(emphasis in original).  "[A]n issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case, and an issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party."  <u>Id</u>.

"If the movant shows that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to demonstrate that there are, in fact, genuine factual disputes which preclude judgment as a matter of law."  <u>Auto-Owners Ins. Co. v. Noble</u>, 2019 WL 4671139, at *2 (M.D. Fla. 2019).  "To satisfy its burden, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  <u>Id</u>.

## II.    Claims for Failure to Provide a Reasonable Accommodation under Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act Against Keiser – First and Second Causes of Action

Pursuant to Title III of the Americans with Disabilities Act ("ADA"), "[n]o individual shall be discriminated against **<u>on the basis of disability</u>** in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. §12182(a) (emphasis added).  Discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges,

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

advantages, or accommodations to individuals with disabilities ….”   42 U.S.C. §12182(b)(2)(A)(ii).

Pursuant to Section 504 of the Rehabilitation Act no qualified individual with a disability “shall, **solely by reason of her or his disability**, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance….”   29 U.S.C. §794(a)(emphasis added).  Plaintiff cannot establish a claim under the ADA or Rehabilitation Act that the Defendant discriminated against her by failing to provide a reasonable accommodation unless she demanded such an accommodation.  Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999).  In an academic setting the initial burden is on the student who must identify her disability and make a case for specific accommodations.  Forbes v. St. Thomas University, Inc., 768 F.Supp.2d 1222, 1231 (S.D. Fla. 2010).

Plaintiff cannot establish that she demanded a reasonable accommodation on the basis of a disability.  Initially, prior to starting the BSN program Plaintiff acknowledged that she read the performance requirements and essential job functions of a graduate nurse, understood the nature of the demands, and was able to perform them “WITHOUT reasonable accommodation”.  **Exhibit A** at pp. 91 (lines 17-25), 92 (lines 1-25), 93 (lines 1-25); **Exhibit B**.  If Plaintiff wished to make a request for an accommodation due to a disability during the program,

Keiser University's Accessibility Guide sets forth the procedure and documentation required from the student.  **Exhibit C** at pp. 4, 7-8, 21, 32-33; **Exhibit D** at pp. 30 (lines 22-25)-31 (lines 1-11).  The student is required to fill out a Request for Adjustments/Accommodations Form with adequate documentation from an appropriately licensed professional which sets forth how the disability limits the student's ability to participate in an academic setting and clearly outlines the accommodation or academic adjustment requested, which is reviewed by an Accommodations Review Committee that either grant or denies the request. **Exhibit C** at pp. 4, 7-8, 21, 32-33; **Exhibit D** at pp. 31 (lines 19-25), 32 (lines 1-25), 33 (lines 1-8).  Plaintiff admittedly failed to submit both a Request for Adjustments/Accommodations Form and any documentation from a medical provider that she needed an accommodation due to a disability.  **Exhibit A** at p. 151 (lines 10-19).

Plaintiff claims that she made a request for a reasonable accommodation during a Zoom meeting with Ms. Presto.  Id. at pp. at pp. 88 (lines 5-18, 22-25), 89 (lines 1-25), 90 (lines 1-25), 91 (lines 1-16).   Plaintiff testified that her accommodation request to Ms. Presto was to have another instructor proctor tests and simulations because she felt "unsafe" around Ms. Decker.  Id. at p. 90 (lines 10-17).  This Zoom meeting was recorded.  Plaintiff stated "I do not feel comfortable being around Ms. Decker" and if she was going to come in Tuesday

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

and Thursday the Plaintiff needed "to be around a different instructor."  Video of Zoom meeting file name zoom_0(1) (2).mp4 at 46:50-48:05.  Simply, a request for a different instructor because the Plaintiff did not feel comfortable around Ms. Decker is NOT an accommodation request that **relates to a disability** under the ADA or Rehabilitation Act.  As a result, cannot establish that she demanded a reasonable accommodation on the basis of a disability and Keiser is entitled to summary judgment on the first and second causes of action.

Furthermore, even if the Court considers a request for a different instructor a request for an accommodation under the ADA and Rehabilitation Act, such a request is unreasonable.  "Federal law obviously does not require a university to provide every accommodation that might help a disabled student perform better." Forbes, 768 F.Supp.2d at 1232.  "Schools need only provide accommodations that they deem reasonable."  Id.  Additionally, "[g]iven the specialized nature of the academic environment, it is settled that courts 'should only reluctantly intervene in academic decisions.'"  Id., *quoting*, Kaltenberger v. Ohio Coll. of Podiatric Med., 162 F.3d 432, 437 (6th Cir. 1998).  In fact, the "Supreme Court instructs that when reviewing the substance of academic decisions, courts 'should show great respect for the faculty's professional judgment."  Id. at 1233, *quoting*, Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 215 (1985).   The request for a different instructor is unreasonable as Ms. Decker was assigned specifically to teach her field of expertise

and there was not an alternate or second instructor to teach her class.  **Exhibit D** at pp. 43 (lines 21-24), 44 (lines 1-25), 45 (lines 1-19).  Therefore, even assuming a request for a different instructor is an accommodation request under the ADA and Rehabilitation Act, Plaintiff's request was unreasonable as Keiser did not have an alternate or second instructor to teach Ms. Decker's class.  As a result, Keiser is entitled to summary judgment on the first and second causes of action.

III. **Claims for Retaliation under Title V of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act Against Keiser – Third and Fourth Causes of Action**

42 U.S.C.A. §12203 (ADA) states that no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.  To establish a prima face case for retaliation under the ADA the plaintiff must show: (1) plaintiff engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) the adverse action was causally related to the protected expression.  Atchison v. Board of Regents of University System of Georgia, 802 Fed.Appx. 495, 503 (11th Cir. 2020).  The Rehabilitation Act incorporates the anti-retaliation provision from 42 U.S.C.A. §12203 of the ADA.  Burgos-Stefanelli v. Secretary, U.S. Dept. of Homeland Sec., 410 Fed.Appx. 243, 245 (11th Cir. 2011).

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Plaintiff testified that she was retaliated by Ms. Decker in April 2020 after Plaintiff met with Mr. Trindle and Ms. Presto about issues with Ms. Decker failing Plaintiff on a paper.  **Exhibit A** at pp. 42 (lines 12-23), 67 (lines 3-25), 68 (ln. 1-4), 69 (lines 20-25), 70 (lines 1-19).  She testified that when she asked for help going to Ms. Presto or Mr. Trindle she felt Ms. Decker retaliated against her by making her grades worse, changing grades, increasing workloads, making her redo assignments, giving her more assignments, telling her she did not turn in assignments when she did and had to resubmit, comments made in class, and refusing to help her.  Id. at pp. 70 (lines 13-25)-71 (lines 1-7).  Similarly, Plaintiff testified that Ms. Gentry retaliated against her for having meetings with Ms. Presto and Mr. Trindle wherein she complained that Ms. Gentry would get agitated when Plaintiff would convey student concerns to Ms. Gentry.  Id. at pp. 104 (lines 1-25), 105 (lines 1-23), 126 (lines 2-8).  However, Plaintiff complaining to Ms. Presto and Mr. Trindle about a grade on a paper and Ms. Gentry getting agitated when Plaintiff would convey student concerns **do not relate to any protected activity regarding disabilities** under the ADA or Rehabilitation Act.  Therefore, they cannot form the basis of a retaliation claim.  As a result, Plaintiff cannot establish that she was retaliated against due to engaging in protected activity under the ADA and Rehabilitation Act, and Keiser is entitled to summary judgment on the third and fourth causes of action.

IV.    **Claims for interference under Title III of the ADA and Section 504 of the Rehabilitation Act Against Keiser – Causes of Action Five and Six**

Under the ADA's anti-interference provision, it is "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b); Equal Employment Opportunity Commission v. STME, LLC, 938 F.3d 1305, 1321 (11th Cir. 2019). The same standards govern discrimination claims under the ADA and Rehabilitation Act and the 11th Circuit construes those statutes interchangeably. Knowles v. Knight, Case No. 8:09-cv-1920-T-26AEP, 2011 WL 13175198 at *1 (M.D. Fla. July 8, 2011).

Plaintiff's allegation in the Third Amended Complaint is that employees of Keiser interfered with her ability to request a reasonable accommodation. D.E. #40 at ⁋⁋105, 113. However, there is no evidence that Keiser interfered with Plaintiff's ability to request a reasonable accommodation. In fact, the evidence establishes that Plaintiff had the opportunity to request reasonable accommodations. **Exhibit B**; **Exhibit C** at pp. 4, 7-8, 21, 32-33. First, prior to starting the BSN program, Plaintiff had the opportunity to inform Keiser that she needed an accommodation to perform the essential job function of a graduate

nurse.  **Exhibit B**.   Plaintiff acknowledged that she read the performance requirements and essential job functions of a graduate nurse.  Id.  Instead, she acknowledged that she could perform the essential job functions of a graduate nurse without an accommodation.  Id.  Second, Plaintiff had available to her the procedure to request an accommodation at any point during her tenure at Keiser but failed to do so.  **Exhibit C** at pp. 4, 7-8, 21, 32-33.  As a result, Plaintiff cannot establish that Keiser interfered with her ability to request a reasonable accommodation and Keiser is entitled to summary judgment on the fifth and sixth causes of action.

**V.     Claim for Breach of Contract Against Keiser – Cause of Action Seven**

A university is best equipped to manage its academic affairs, "so it must be afforded 'broad discretion when it exercise[s] its *academic* judgment."  Rhodes v. Embry-Riddle Aeronautical University, Inc., 513 F.Supp.3d 1350, 1355 (M.D. Fla. 2021), *quoting*, Jallali v. Nova. Se. Univ., Inc., 992 So. 2d 338, 344 (Fla. 4th DCA 2008)(emphasis added).  Courts decline to entertain breach of contract actions where "[t]he claim requires the factfinder to enter the classroom and determine whether or not the *judgments and conduct of professional educators were deficient*."  Id. (emphasis added).   Courts have supported breach of contract claims where universities fail to perform *specific contractual obligations*, provided that such claims do not require judicial review of an academic evaluation.  Id. (emphasis added).

Initially, the Plaintiff cannot specifically identify the contract she is claiming was breached.  Plaintiff generally identified the alleged breach as to documents she signed for enrollment during registration along with her financial documents. **Exhibit A** at p. 152 (lines 9-12).  Plaintiff identifies the terms of those documents that were allegedly breached as providing an education and providing an education in a safe environment.  Id. at p. 152 (lines 13-18).  First, these are not specific contractual obligations which were allegedly breached but the extremely broad notion that Keiser failed to provide Plaintiff an education.  Second, Plaintiff's allegation would require a judicial review of an academic evaluation. For example, Plaintiff's allegations include issues with grading, increasing workloads, making Plaintiff redo assignments, giving her more assignments, having her resubmit assignments, comments made in class, and refusing to help her.  Id. at pp. 70 (lines 13-25)-71 (lines 1-7).  This is clearly the type of breach of contract claim that courts decline to entertain because it requires the factfinder to enter the classroom and determine whether or not the judgments and conduct of professional educators were deficient.   As a result, Keiser is entitled to summary judgment on the seventh cause of action for breach of contract.

## VI.  Claims for Breach of Duty of Good Faith and Fair Dealing, Breach of Express Warranties, and Negligent Misrepresentation Against Keiser – Causes of Action Eight, Nine, and Ten

Plaintiff's claims for breach of the duty of good faith and fair dealing, breach of express warranties, and negligent misrepresentation relate to representations and warranties allegedly made by Keiser.  <u>Id</u>. at p. 153 (lines 10-20).  Specifically, Plaintiff claims that Keiser represented that Plaintiff's courses would all be transferable, and that she would be guaranteed a position when she graduated. <u>Id</u>. at pp. 153 (lines 10-20), 156 (lines 5-11).  However, Plaintiff electronically executed an Enrollment Verification Form where she acknowledged that she was told that Keiser **<u>cannot</u>** guarantee employment and **<u>cannot</u>** guarantee transferability of credits.  **Exhibit E** at questions 15 & 17.  Furthermore, the Plaintiff did not graduate, so even if representations were made regarding a guaranteed position after graduation, there is no evidence to prove they were false.  **Exhibit A** at pp. 210 (lines 11-25)-211 (lines 1-7).  Moreover, when Plaintiff inquired into transferring to another university, the schools informed Plaintiff that they had issues with her GPA and she never even applied to any schools, so even if representations were made as to the transferability of credits, there is no evidence to establish the credits Plaintiff earned at Keiser would not transfer to another institution.  <u>Id</u>. at pp. 213 (lines 4-25), 214 (lines 1-25), 215 (lines 1-3).  As a result, Keiser is entitled to summary judgment on the eight, ninth, and tenth causes of action.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

## VII.    Claim for Deceptive and Unfair Trade Practices Under Fla. Stat. §501.201 Against Keiser – Cause of Action Eleven

A Florida Deceptive and Unfair Trade Practice claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  Carriuolo v. General Motors LLC, 72 F.Supp.3d 1323, 1325 (S.D. Fla. 2014).  Plaintiff claims that Keiser engaged in deceptive and unfair trade practices by falsely representing that Keiser would provide accommodations and refusing to provide accommodations.  D.E. #40 at ¶154.  There is no evidence that Keiser represented to Plaintiff that Keiser would provide her accommodations and then refused to provide the same.  In fact, Keiser has a detailed procedure for students to request accommodations which includes filling out a Request for Adjustments/Accommodations Form with adequate documentation from an appropriately licensed professional.  **Exhibit C** at pp. 4, 7-8, 21, 32-33; **Exhibit D** at pp. 31 (lines 19-25), 32 (lines 1-25), 33 (lines 1-8).  Plaintiff admittedly failed to submit both a Request for Adjustments/Accommodations Form and any documentation from a medical provider that she needed an accommodation due to a disability.  **Exhibit A** at p. 151 (lines 10-19).   Furthermore, as discussed in detail above, Plaintiff never made a request for accommodation due to a disability during a Zoom meeting with Ms. Presto.  Id. at pp. 88 (lines 5-18, 22-25), 89 (lines 1-25), 90 (lines 1-25), 91 (lines 1-16); Video of Zoom meeting file name zoom_0(1)

(2).mp4 at 46:50-48:05.  As a result, Plaintiff cannot establish a claim for Deceptive and Unfair Trade Practices and Keiser is entitled to summary judgment on cause of action eleven.

**VIII.  Claim for Unjust Enrichment Against Keiser – Cause of Action Twelve**

Under Florida law, to establish a claim for unjust enrichment a plaintiff must prove the following: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knows of the benefit and voluntarily accepts and retains it; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit."  Rhodes, 513 F.Supp.3d at 1359.  To establish unjust enrichment, Plaintiff claims that because of Keiser's wrongful acts and omissions, Keiser provided inadequate support services.  D.E. #40 at ¶159.  First, claims based on "wrongful acts and omissions" and providing "inadequate support services" are actually educational malpractice claims given that they require a judicial inquiry into academic adequacy.  Rhodes, 513 F.Supp.3d at 1357.  Educational malpractice is not a recognized claim in Florida.  Rhodes, 513 F.Supp.3d at 1356; Rohn v. Palm Beach Cnty. Sch. Bd., No. 11-81408-CIV, 2012 WL 6652940, at *3 (S.D. Fla. Dec. 21, 2012).  Furthermore, Plaintiff claims she is entitled to restitution because she conferred a benefit by enrolling at Keiser and paying tuition and that it would be inequitable for Defendant to retain the tuition.  D.E. #40 at ¶¶157-160.  However, the Plaintiff cannot establish that circumstances are such that it would be

inequitable for the Defendant to retain tuition.  Specifically, while Plaintiff paid tuition, Keiser provided educational courses wherein if Plaintiff earned a passing grade Plaintiff earned credits toward a degree.  **Exhibit F**.  In fact, in exchange for the tuition paid, Defendant provided education services which resulted in Plaintiff earning 40 college credits from Keiser.  Id.[3]  As a result, the Plaintiff cannot establish circumstances are such that it would be inequitable for Keiser to retain the tuition paid.

## IX.   Claim for Negligence Against Decker, Gentry, Presto, Trindle, and Keiser – Cause of Action Thirteen

Quite simply, educational malpractice is not a recognized claim in Florida. Rhodes, 513 F.Supp.3d at 1356; Rohn v. Palm Beach Cnty. Sch. Bd., No. 11-81408-CIV, 2012 WL 6652940, at *3 (S.D. Fla. Dec. 21, 2012).  It is important to note that this is the only cause of action against the individual Defendants.  Plaintiff claims that Ms. Decker and Ms. Gentry were negligent because they did not provide Plaintiff with a proper education.  **Exhibit A** at pp. 102 (lines 13-25)-103 (lines 1-7); 127 (lines 7-23).  Plaintiff claims Ms. Presto and Mr. Trindle were negligent for not stopping the issues Plaintiff was having with Ms. Decker and Ms. Gentry.  Id. at pp. at p. 142 (lines 13-24), 148 (lines 9-25)-149 (lines 2-5).  Plaintiff's negligence claims against Keiser and the individual Defendants clearly relate to the

---

[3] Other credits noted on Plaintiff's transcript were transferred from a prior institution.

**COLE, SCOTT & KISSANE, P.A.**
ESPERANTE BUILDING - 222 LAKEVIEW AVENUE, SUITE 120 - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

educational services provided by the Defendants.   Given that educational malpractice is not a recognized claim in Florida, Defendants are entitled to summary judgment as to cause of action thirteen for negligence.

WHEREFORE, and for the reasons set forth above, Defendants KEISER UNIVERSITY, PROFESSOR BROOKE DECKER, PROFESSOR AMBERLYN GENTRY, DEAN HAROLD TRINDLE, and PROGRAM DIRECTOR KIMBERLY PRESTO, respectfully request that this Court grant this Motion for Summary Judgment in its entirety as outlined above and grant any other relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of March 2023, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendants KEISER UNIVERSITY;*
*PROFESSOR BROOKE DECKER;*
*PROFESSOR AMBERLYN GENTRY; DEAN*
*HAROLD TRINDLE; PROGRAM DIRECTOR*
*KIMBERLY PRESTO*
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9229
Facsimile (561) 683-8977

21

Primary e-mail: justin.sorel@csklegal.com
Alternate e-mail: patricia.betit@csklegal.com

By:   *s/ Justin C. Sorel*
      JUSTIN C. SOREL
      Florida Bar No.:  0016256

6566.0025-00/23296533