## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JASMINE HUNGERMAN,                    Case No. 8:21-cv-00318-MSS-JSS

               Plaintiff,                    Hon. Mary Scriven

v.

KEISER UNIVERSITY, PROFESSOR
BROOKE DECKER, PROFESSOR AMBER
GENTRY, DEAN HAROLD TRINDLE,
PROGRAM DIRECTOR KIMBERLY
PRESTON, and DOES 1-100,

               Defendants.

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF 57)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

I.     NARRATIVE ............................................................................................................. 1

II.    UNDISPUTED FACTS ............................................................................................. 1

       A. RETALIATION ................................................................................................... 3

       B. ACCOMMODATIONS ........................................................................................ 6

       C. DAMAGES ......................................................................................................... 6

III.   SUMMARY JUDGMENT STANDARD .................................................................. 7

IV.    ARGUMENT ............................................................................................................. 7

       A. DEFENDANTS FAILED TO ACCOMMODATE UNDER TITLE III OF THE ADA
          (COUNT ONE, TWO) ........................................................................................ 7

          1.    Plaintiff's Disabilities are Protected by The Americans With Disabilities Act
                ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). ........... 7

       B. PLAINTIFF IS ENTITLED TO RELIEF FOR DISCRMINATION, RETALIATION AND
          INTERFERENCE UNDER ADA AND REHAB ACT (COUNTS THREE, FOUR, FIVE
          AND SIX) ............................................................................................................ 9

       C. PLAINTIFF CAN ESTABLISH A CLAIM FOR BREACH OF CONTRACT (COUNT
          SEVEN) AND UNJUST ENRICHMENT (COUNT TWELVE) ..................................... 13

       D. PLAINTIFF CAN ESTABLISH CLAIMS FOR BREACH OF DUTY OF GOOD FAITH
          AND FAIR DEALING, BREACH OF EXPRESS WARRANTIES, AND NEGLIGENT
          MISREPRESENTATION AGAINST KEISER (COUNTS EIGHT, NINE AND TEN) ... 14

       E. PLAINTIFF CAN ESTABLISH CLAIM FOR DECEPTIVE AND UNFAIR TRADE
          PRACTICES UNDER FLA. STA. §501.201 (COUNT ELEVEN) ................................... 14

       F. NEGLIGENCE (COUNT THIRTEEN) ............................................................... 15

V.     CONCLUSION ....................................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Alvey v. Gualtieri*, No. 8:15-cv-1861-T-33AEP, 2016 U.S. Dist. LEXIS 153837, at *30 (M.D. Fla. Nov. 7, 2016) ........................................................................................................ 9

*Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008) .......................... 13

*Carriuolo v. General Motors LLC*, 72 F.Supp.3d 1323, 1325 (S.D. Fla. 2014) .......................... 14

*Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003) ........................................ 16

*Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010) ........................................................ 9

*D.A. v. Meridian Joint Sch. Dist. No. 2*, 289 F.R.D. 614, 623 (D. Idaho 2013) .......................... 11

*Datto v. Ass'n of Am. Med. Colls.*, No. 18-CV-21053, 2019 U.S. Dist. LEXIS 97879, at *23 (S.D. Fla. June 8, 2019) ................................................................................................... 13

*Datto v. Univ. of Miami*, No. 18-CV-21053, 2020 U.S. Dist. LEXIS 131697, at *59 (S.D. Fla. July 23, 2020) ......................................................................................................... 14

*Dudley v. Singleton*, 508 F. Supp. 3d 1118, 1126 (N.D. Ala. 2020) ............................................ 9

*Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010) ........................ 11

*Gibson v. Lynn Univ., Inc.*, No. 20-CIV-81173-RAR, 504 F. Supp. 3d 1335, 2020 WL 7024463, at *2 (S.D. Fla. Nov. 29, 2020) ....................................................................................... 13

*Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1261 n.14 (11th Cir. 2007) .............................. 9

*IDEARC Media LLC v. TSG Media, Inc.*, No. 09-60531-CIV, 2010 WL 11505563, at *4 (S.D. Fla. Sept. 30, 2010) ....................................................................................................... 13

*J.S.R v. Dale Cty. Bd. of Educ.*, No. 1:13-CV-582-WKW, 2015 U.S. Dist. LEXIS 129741, at *40 (M.D. Ala. Sep. 28, 2015) ............................................................................................. 7, 11

*Limones v. Sch. Dist. of Lee Cty.*, 161 So. 3d 384, 388 n.3 (Fla. 2015) ...................................... 16

*Martin v. Halifax Healthcare Sys.*, 621 Fed. Appx. 594, 601 (11th Cir. 2015)............................ 12

*McCawley v. Universidad Carlos Albizu, Inc.,* 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006) .... 13

*Ms. H. v. Montgomery Cnty. Bd. of Educ.*, 784 F. Supp. 2d 1268 (M.D. Ala. 2011).................. 11

*Muchnick v. Goihman,* 245 So. 3d 978, 981 (Fla. Dist. Ct. App. 2018*)*...................................... 16

*Orzechowitz v. Nova Se. Univ.,* No. 13-62217-CIV, 2014 U.S. Dist. LEXIS 43674, 2014 WL
    1329890, at *3 (S.D. Fla. Mar. 31, 2014) ................................................................. 13

*Perry v. Schumacher Grp. of Louisiana*, 809 F. App'x 574, 582 (11th Cir. 2020)...................... 15

*Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) .......................... 11

*Segev v. Lynn Univ.*, No. 19-CV-81252-Can, 2021 U.S. Dist. LEXIS 37731, at *28 (S.D. Fla.
    Feb. 26, 2021)........................................................................................................ 12

*Sirpal v. Univ. of Miami,* 509 F. App'x 924, 929 (11th Cir. 2013)............................................... 13

*Smith v. Dunn*, No. 2:19-cv-927-ECM, 2021 U.S. Dist. LEXIS 24917, at *22-23 (M.D. Ala. Feb.
    9, 2021)................................................................................................................... 9

*Solomon v. Vilsack*, 763 F.3d 1, 15, 412 U.S. App. D.C. 127 (D.C. Cir. 2014).......................... 10

*Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1328 (11th Cir. 1998)..................................... 10

*Tank Tech, Inc. v. Valley Tank Testing, LLC.*, 244 So. 3d 383, 393 (Fla. Dist. Ct. App. 2018) .. 16

*Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 607 F.3d 742, 746 (11th
    Cir. 2010) .............................................................................................................. 14

*United States v. Hialeah Hous. Auth.*, 418 Fed. Appx. 872, 876 (11th Cir. 2011)....................... 9

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) ........................................... 13

*Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) ........................................................ 15, 16

**Statutes**

29 U.S.C. § 794(a) .............................................................................................................. 11

Comes now Plaintiff Jasmine Hungerman ("Plaintiff"), by and through the undersigned counsel, and hereby files this Response to Defendants' Motion for Summary Judgment (Doc. 57). In support thereof, Plaintiff states as follows:

## I.      NARRATIVE

On December 15, 2021, Plaintiff filed a Third Amended Complaint including the following Counts: One - Failure to Accommodate under Title III of the ADA; Two - Violation of Section 504 of the Rehabilitation Act; Three - Retaliation in Violation of Title V of the ADA; Four - Retaliation in Violation of Section 504 Rehabilitation Act; Five - Interference in Violation of Title III of the ADA; Six - Interference in Violation of Section 504 of the Rehabilitation Act; Seven – Breach of Contract; Eight - Breach of Duty of Good Faith and Fair Dealing; Nine - Breach of Express Warranties; Ten - Negligent Misrepresentation; Eleven - Deceptive and Unfair Trade Practices Fla. Stat. §501.201; Twelve - Unjust Enrichment; Thirteen - Negligence. Defendants did not file a Motion to Dismiss as to the Third Amended Complaint. Therefore, all counts are presently before this Honorable Court.

## II.      UNDISPUTED FACTS

1.      In 2018 Plaintiff, communicated with an advisor from KU and was advised that all of their credits would be transferable.  (Plf. Depo. 23, 159).

2.      In January 2019, Plaintiff applied to the nursing program of at KU ("BSN Program"). (Plf. Depo. 24).

3.      In March 2019, Plaintiff began taking classes at the KU's Lakeland Campus. (Plf. Depo. 28-29). In January 2020, Plaintiff enrolled in KU 's inaugural Bachelor of Science in Nursing program. (Plf. Depo. 29).

1

4.      After the completion of the first semester of the BSN Program, Plaintiff academically made the President's List. (Plf. Depo. 76).

5.      Subsequently, Plaintiff was enrolled in about four classes where Professor Decker was the instructor. (Plf. Depo. 30).

6.      Plaintiff accused Professor Decker of harassing and bullying her.  (Plf. Depo. 34).

7.      During Plaintiff's first semester at KU, she reported various issues she was having to Professor Presto, Presto then reported these issues to Dean Trindle (Plf. Depo 141).

8.      Plaintiff, Presto, and Dean Trindle attended a meeting together around March or April of 2020 wherein Dean Trindle promised Plaintiff that her issues would be handled appropriately (Plf. Depo. 142-45).

9.      Plaintiff saw a mental health professional approximately once a week prior to enrolling at KU (Plf Depo 183). Due to KU's discriminatory, deceptive actions, Plaintiff's visits to her treating mental health professionals continued and increased. (Plf. Depo 184-185).

10.      Throughout her enrollment at KU, Plaintiff continuously was treated by numerous treating physicians for her disabilities, anxiety, depression and PTSD, including chronic back pain and headaches. (Plf. Depo. 160-164).

11.      Plaintiff suffers from KU's adverse actions by increased panic attacks, anxiety, chronic depression, PTSD and overall mental anguish. (Ex. A).

12.      Plaintiff has experienced PTSD relating to traumatic experiences while enrolled at KU. (Ex. A). Plaintiff's conditions were exasperated and worsened due to the traumatic experiences and effects of KU's adverse actions. (Ex. A).

13.     Plaintiff has been unable to move forward in her life due to the falsification of her grades and transcripts causing inability to obtain education and employment affecting her personal and family life.  (Ex. A).

14.     Plaintiff's traumatic emotional and physical experiences have been exasperated by her psychiatric disorders and retaliation from KU and staff members. (Ex. A).

15.     On November 29, 2022, Defendants' expert, Dr. David A. Fishbain, Distinguished Fellow of the American Psychiatric Association of Boarded in Psychiatry/Neurology and Pain Medicine performed a Psychiatric Medical Evaluation on Plaintiff performed a CME.  (Ex. B).

## A.  RETALIATION

16.     Plaintiff set out in detail Defendants' retaliatory actions. (Plf. Resp. Interr. 16, 17).

17.     After Plaintiff complained about Decker's discrimination to Dean Trindle, she received a failing grade from Professor Decker. (Plf. Depo. 39).

18.     Professor Presto had a meeting with Plaintiff where they examined Plaintiff's work product and Presto found no fault with Plaintiff's work product. (Plf. Depo. 40).  This meeting caused Plaintiff extreme emotional distress (Plf. Depo. 41).

19.     Upon the commencement of the second semester, Decker again began making Plaintiff re-do assignments and gave Plaintiff additional assignments and added additional patients to Plaintiff's workload. (Plf. Depo 43, 52).

20.     On or about March 2020, Decker made all female members of the class disrobe and perform assessments on other female students' breasts and demonstratively used Plaintiff's breasts causing Plaintiff severe mental anguish and furthered her PTSD of prior sexual abuse.  (Plf. Depo. 45, 50).

21.     Plaintiff informed Professor Presto of the incident.  (Plf. Depo. 47, 48).

22.     Throughout this time Plaintiff's mental health was in a state of deterioration. To combat this Plaintiff made an increasing number of visits to her psychiatrist and was prescribed a higher dose of medicine.  (Plf. Depo. 53).

23.     Later in the semester, Decker purposely gave Plaintiff conflicting information to reschedule an exam. (Plf. Depo 53-54).

24.     While working in a group exercise with simulated patients, Professor Decker caused Plaintiff extreme embarrassment, humiliation resulting in Plaintiff suffering a panic attack. (Plf. Depo. 56).

25.     After this incident, Professor Decker required Plaintiff to perform additional work. (Plf. Depo. 57). Plaintiff subsequently failed that examination (Plf. Depo. 57).

26.     On August 13, 2020, Plaintiff's last day at KU, Plaintiff suffered a severe panic attack and was unable to complete the tasks assigned to her.  (Plf. Depo. 58-59).

27.     On August 13, 2020, Plaintiff had a Zoom meeting with Presto regarding the adverse events of the day. (Plf. Depo. 60).

28.     Around the same time, Plaintiff took an exam proctored by Professor Decker. (Plf. Depo. 69). After receiving a failing grade the Plaintiff appealed to Presto arguing the examination had not been proctored correctly. (Plf. Depo. 69). After voicing her concerns, Plaintiff's grade was lowered from a 60 to a 50. (Plf. Depo. 69).

29.     Plaintiff complained to KU's directors of KU's staff retaliating against her. (Plf. Depo. 70).

30.     Upon Plaintiff's withdraw from KU, her grades that were listed as "W" (withdraw) were subsequently changed to "F" (fail). (Plf. Depo. 72).

31.     Plaintiff contacted Professor Decker regarding her final grade in "Clinical Decision Making". (Plf. Depo. 81-82).

32.     On or about August 18, 2020, Plaintiff participated in what is known as a "simulation day" (Plf. Depo. 85-86). On this day Plaintiff suffered from a panic attack after being informed that KU would refuse to switch her instructor from Decker to a different instructor, even though other instructors were readily available. (Plf. Depo. 88-89).

33.     After Plaintiff met with Presto and Dean Trindle, Gentry began to lower her grades. (Plf. Depo. 107). Plaintiff attended "Nursing Pharmacotherapeutics" Gentry took issue with Plaintiff submitting more than one assignment per day on Wiki. (Plf. Depo. 119).

34.     Plaintiff emailed Professor Gentry and asked why there was a different grading criterion applied to her than other students. (Plf. Depo. 119 -120). Plaintiff then met with Presto and Dean Trindle to discuss these issues. (Plf. Depo. 126). After these meetings Plaintiff's grade in Professor Gentry's class was inexplicably lowered. (Plf. Depo. 126).

35.     On several occasions Plaintiff also raised the issue of retaliation by her Professors to Presto. (Plf. Depo. 129). Plaintiff begged Presto, Director of the Nursing program at KU to change her instructors so she would be able to graduate but Presto would not agree. (Plf. Depo. 128; 131).

36.     Presto ratified the grades, including grades that should have been recorded as a "W" but instead were recorded as an "F". (Plf. Depo. 133). As a result of her low G.P.A. Plaintiff was advised by other nursing schools that she would not be accepted as a transfer student (Plf. Depo. 134).

## B. ACCOMMODATIONS

37.     Plaintiff stated specifically in her Answers to Interrogatories accommodations requested. (Plf. Resp. Interr. 15).

38.     Prior to attending KU, Plaintiff had traumatic experiences that included car accidents and sexual assault. (Plf. Depo 186).

39.     Plaintiff saw a mental health professional approximately once a week prior to enrolling at KU (Plf. Depo 183) and while enrolled at KU Plaintiff continued to see mental health professionals and visits increased (Plf. Depo 184-185).

40.     Throughout her enrolment at KU, Plaintiff informed Professor Decker of her disabilities and the symptoms she experienced because of her disabilities (Plf. Depo. 99).

41.     Prior to the Plaintiff's panic attack, she requested that the school provide her with reasonable accommodation for her PTSD and ADHD. (Plf. Depo. 90).

42.     Throughout her enrollment at KU Plaintiff saw numerous healthcare professionals related to disabilities including anxiety, back pain, headaches, depression and PTSD. (Plf. Depo. 160-164).

## C. DAMAGES

43.     Plaintiff stated specifically in her Answers to Interrogatories accommodations requested. (Plf. Resp. Interr. 15).

44.     On August 13, 2020, Plaintiff formally withdrew with only two months left to finish the BSN Program. (Plf. Depo 211).

45.     Plaintiff suffered economic losses related to her tuition, dress code, supplies, books, non-transferrable credits, transportation and moving expenses. (Plf. Depo 202, 207).

### III.    SUMMARY JUDGMENT STANDARD

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). *J.S.R v. Dale Cty. Bd. of Educ*., No. 1:13-CV-582-WKW, 2015 U.S. Dist. LEXIS 129741, at *3 (M.D. Ala. Sep. 28, 2015).

### IV.    ARGUMENT

### A. DEFENDANTS FAILED TO ACCOMMODATE UNDER TITLE III OF THE ADA (COUNT ONE, TWO)

#### 1.    Plaintiff's Disabilities are Protected by The Americans With Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

Plaintiff's mental diagnoses of Major Depressive Disorder, recurrent, moderate, Anxiety Disorder, Panic Disorder, PTSD, and ADHD are recognized disabilities under the ADA and Rehab Act. (Attached hereto and incorporated herein are: **Exhibit A** is Gwinnett Psychiatry, PC letter dated February 23, 2023; **Exhibit B** is Dr. David A. Fishbain, Defendants' expert ("CME")). Pursuant to the CME, Fishbain used the DSM-5 and Sheehan Patient Rated Anxiety Scale to determine/verify the Plaintiff with: 1) panic disorder; 2) moderate generalized disorder; 3) moderate anxiety; 4) severe major depressive disorder; 5) persistent depressive disorder (diagnosed September 2019 to present); 6) PTSD (71/80 scored "when DSM-5 scale used with "school difficulties as the trauma"; 7) somatic symptom disorder (Plaintiff's score 65/70 "indicating that the pain is disabling"); 8) fatigue disorder (44/54 scored); insomnia disorder; nightmare disorder ("In her case the nightmares relate to the school issue rather than the sexual abuse."; 9) educational problem. (Ex. B CME).

The ADA prevents individuals who have a qualified disability from being discriminated against because of their disabilities. Title II of the ADA applies specifically to educational institutions, requiring them to make educational opportunities, extracurricular activities, and facilities open and accessible to all students. Section 504 applies to educational institutions who receive grant monies from the federal government, while Title II of the ADA applies only to public entities. The goal and purpose of the two acts is to ensure that those who suffer various specified disabilities are allowed equal access to education. Section 309 of the ADA fills the gap regarding testing and examination not defined by Section 504 or ADA.

Prior to the start date of the BSN program, Plaintiff communicated directly with Presto via phone as well as in person and advised Presto of her medications and medical diagnoses, why she was taking them and what they were for in relation to her previous medical history. Plaintiff advised her of all previous medical history and continuation of mental health treatments and medications. During these times Plaintiff was advised by Presto that there would be no complications relating to her medications or medical history. Presto stated that she would handle and take care of everything. (Attached hereto and incorporated herein as **Exhibit C** is Plaintiff's Responses to Interrogatories)

(Plf. Resp. Interr. 15). Additionally, throughout her enrolment at KU, Plaintiff informed Professor Decker of her disabilities and the symptoms she experienced because of her disabilities (Plf. Depo. 99; Plf. Resp. Interr. 15). Plaintiff repeatedly requested accommodations.  (Plf. Resp. Interr. 15). Prior to the Plaintiff's panic attack, she requested that the school provide her with reasonable accommodation for her PTSD and ADHD. (Plf. Depo. 90). Plaintiff begged Presto, Director of the Nursing program at KU to change her instructors so she would be able to graduate

but Presto would not agree. (Plf. Depo. 128, 131; Plf. Resp. Interr. 15, 16, 17, 18). Plaintiff stated

numerous times that she did not feel safe around Decker. (Plf. Resp. Interr. 15, 16, 17, 18).

A failure to accommodate constitutes a distinct claim from a disparate treatment or

intentional discrimination claim, as a failure to make reasonable accommodation claim requires

no animus or discriminatory motivation. *Dudley v. Singleton*, 508 F. Supp. 3d 1118, 1126 (N.D.

Ala. 2020).  Plaintiff contends that there was no need for her to formally request a specific

accommodation when the Defendants knew and she had informed them of her disabilities. *Smith*

*v. Dunn*, No. 2:19-cv-927-ECM, 2021 U.S. Dist. LEXIS 24917, at *22-23 (M.D. Ala. Feb. 9,

2021). Although the Eleventh Circuit has not ruled on the specificity required of a request for

accommodation under Title II of the ADA, that court has held in Fair Housing Act and ADA Title

I cases that no particular form is required. Rather, the focus is whether the defendant "[has] enough

information to know of both the disability and desire for an accommodation, or circumstances

must at least be sufficient to cause a reasonable [defendant] to make appropriate inquiries about

the possible need for accommodation." *United States v. Hialeah Hous. Auth.*, 418 Fed. Appx. 872,

876 (11th Cir. 2011)(*quoting Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010)); *see

also Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1261 n.14 (11th Cir. 2007)(noting in ADA

Title I case that the Eleventh Circuit has not "determined precisely what form the request must

take"); *Alvey v. Gualtieri*, No. 8:15-cv-1861-T-33AEP, 2016 U.S. Dist. LEXIS 153837, at *30

(M.D. Fla. Nov. 7, 2016).

## B.  PLAINTIFF IS ENTITLED TO RELIEF FOR DISCRMINATION, RETALIATION AND INTERFERENCE UNDER ADA AND REHAB ACT (COUNTS THREE, FOUR, FIVE AND SIX)

Furthermore, Plaintiff had a belief that she had engaged in a protected activity in making

her requests for ADA accommodations, "it is sufficient that an employee have a good faith,

objectively reasonable belief that [her] activity is protected by the statute." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1328 (11th Cir. 1998). Numerous circuit courts have found that a request for accommodations is a protected activity under the ADA. See, e.g., *Solomon v. Vilsack*, 763 F.3d 1, 15, 412 U.S. App. D.C. 127 (D.C. Cir. 2014) ("[W]e join our sister circuits in holding that the act of requesting in good faith a reasonable accommodation is a protected activity under 42 U.S.C. § 12203[.]")

Plaintiff was retaliated by Decker in April 2020 after Plaintiff met with Trindle and Presto regarding Decker failing Plaintiff on a paper. (MSJ ¶15).  After a review of the failed paper, it was determined that there was no fault in Plaintiff's work produce. (Plf. Depo. 40). Decker knowing of Plaintiff's mental/emotional disabilities caused Plaintiff extreme embarrassment, humiliation causing Plaintiff to suffer a panic attack and prolonged extreme emotional distress. (Plf. Depo. 41, 56). When Plaintiff asked for help from Presto and Trindle, Decker retaliated against her by making her grades worse, changing grades, increasing workloads, making her redo assignments, giving her more assignments, telling her she did not turn in assignments when she did and had to resubmit, comments made in class, misinformation of exam times and refusing to help her. (MSJ ¶16; Plf.  Depo. 43, 52-54, 69). Gentry retaliated against Plaintiff for complaining to Presto and Trindle about Gentry's agitation toward Plaintiff when she conveyed student concerns to Gentry. (MSJ ¶17). Presto ratified the grades, including grades that should have been recorded as a "W" but instead were recorded as an "F". (Plf. Depo. 133). As a result of her low G.P.A. Plaintiff was advised by other nursing schools that she would not be accepted as a transfer student (Plf. Depo. 134).

District courts have allowed special education cases arising under § 504 and/or the ADA to proceed to trial where the court could not decide the question of intentional discrimination as a

matter of law. *J.S.R v. Dale Cty. Bd. of Educ.*, No. 1:13-CV-582-WKW, 2015 U.S. Dist. LEXIS 129741, at *40 (M.D. Ala. Sep. 28, 2015). For example, in *D.A.*, the court found the plaintiff's evidence that the defendant provided inadequate testing to a student was sufficient reason to deny the defendant's motion for summary judgment, notwithstanding the defendant's evidence of its efforts to provide accommodations to the plaintiff. *D.A. v. Meridian Joint Sch. Dist. No. 2*, 289 F.R.D. 614, 623 (D. Idaho 2013). Similarly, in *Ms. H.*, the plaintiff presented probative evidence that the defendant "simply ignored [the student] by failing to conduct tests or assessments, and by failing to significantly update [the student's] § 504 plans despite [the student's] poor grades." *Ms. H. v. Montgomery Cnty. Bd. of Educ.*, 784 F. Supp. 2d 1268 (M.D. Ala. 2011).

Section 504 provides that "[n]o otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). *J.S.R v. Dale Cty. Bd. of Educ.*, No. 1:13-CV-582-WKW, 2015 U.S. Dist. LEXIS 129741, at *30 (M.D. Ala. Sep. 28, 2015). A discrimination claim under the ADA or Section 504 "can be based on either a conventional 'disparate treatment' theory, or a theory that the defendant failed to make 'reasonable accommodations,' or both."  *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1227 (S.D. Fla. 2010); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008).

Throughout her enrollment at KU, Plaintiff made defendants fully aware of Plaintiff's disabilities and the symptoms she experienced because of her disabilities (Plf. Depo. 99). Plaintiff requested that Defendants provide her with reasonable accommodations for her PTSD and ADHD. (Plf. Depo. 90). To establish a right to compensatory damages under § 504 of the RA, a plaintiff must prove: (1) that she is a qualified individual with a disability,[12] (2) who was excluded from

participation in or denied the benefits of the defendant's services, programs, or activities, or otherwise discriminated against, (3) on account of his disability, and (4) that the exclusion or denial was the result of intentional discrimination. *Martin v. Halifax Healthcare Sys*., 621 Fed. Appx. 594, 601 (11th Cir. 2015). A plaintiff can establish intentional discrimination with evidence that the defendant was "'deliberately indifferent' to [her] rights under the ADA and the Rehab[ilitation] Act" because the defendant knew that a rights violation was "substantially likely," but "fail[ed] to act on that likelihood." *Id.* at 603-04 (citation omitted).  Moreover, to hold an organization liable, the defendant's deliberate indifference must have been through "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [defendant's] behalf [and who] has actual knowledge of discrimination in the [defendant's] programs and fails to adequately respond." *Segev v. Lynn Univ*., No. 19-CV-81252-Can, 2021 U.S. Dist. LEXIS 37731, at *28 (S.D. Fla. Feb. 26, 2021).  Deliberate indifference requires that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in the [defendant's] programs and fails adequately to respond." *Id*. at *29.

Plaintiff can establish that Defendants' actions were intentional discrimination by acting in a manner "'deliberately indifferent' to [her] rights under the ADA." Plaintiff is entitled to monetary relief in the form of compensatory damages, attorneys' fees and costs for injury to his profession and emotional damages based on the Defendants' (persons with key decision-making authority in the administrative process) retaliation, discrimination and denying Plaintiff accommodations. Additionally, evidence shows that the Defendants' policies and procedures for ADA compliance are deficient. Professors nor the administration or decision-makers advised Plaintiff that she was required to go to KU's disability services in order for her to receive an accommodation for her

disabilities even though they were all clearly aware of her disabilities and her requests for accommodations.

## C.  PLAINTIFF CAN ESTABLISH A CLAIM FOR BREACH OF CONTRACT (COUNT SEVEN) AND UNJUST ENRICHMENT (COUNT TWELVE)

"Under Florida law, the legal relationship between a private university and a student is 'solely contractual in character.'" *Gibson v. Lynn Univ., Inc*., No. 20-CIV-81173-RAR, 504 F. Supp. 3d 1335, 2020 WL 7024463, at *2 (S.D. Fla. Nov. 29, 2020) (J. Ruiz) (*quoting Sirpal v. Univ. of Miami,* 509 F. App'x 924, 929 (11th Cir. 2013)) an*d Jallali v. Nova Se. Univ., Inc.*, 992 So. 2d 338, 342 (Fla. Dist. Ct. App. 2008)). "It is generally accepted that the terms of that contractual relationship 'may be derived from university publications such as the student handbook and catalog.'" *Orzechowitz v. Nova Se. Univ.,* No. 13-62217-CIV, 2014 U.S. Dist. LEXIS 43674, 2014 WL 1329890, at *3 (S.D. Fla. Mar. 31, 2014) ("[A] student handbook or publication can create contractual obligations on the part of university that are not necessarily limited to the 'service' of providing a college degree."); *McCawley v. Universidad Carlos Albizu, Inc.,* 461 F. Supp. 2d 1251, 1257 (S.D. Fla. 2006). A jury must interpret the parties' conduct to determine if a contract was in fact formed. A "genuine dispute of material fact as to whether there was a meeting of the minds precluded summary judgment on implied-in-fact contract". *IDEARC Media LLC v. TSG Media, Inc.,* No. 09-60531-CIV, 2010 WL 11505563, at *4 (S.D. Fla. Sept. 30, 2010).

In Florida, a breach of contract claim requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach; and (3) damages resulting from the breach. *Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1272 (11th Cir. 2009). To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Datto v. Ass'n of Am. Med. Colls.*, No. 18-CV-21053, 2019 U.S. Dist. LEXIS 97879, at *23 (S.D. Fla. June 8, 2019). A claim based on an oral contract is subject to the same

requirements.  For an oral contract to have achieved a sufficient specification of the essential terms, the parties must have "mutually assented to a certain and definite proposition and left no essential terms open." *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Companies, Inc*., 607 F.3d 742, 746 (11th Cir. 2010) (citations omitted); *Datto v. Univ. of Miami*, No. 18-CV-21053, 2020 U.S. Dist. LEXIS 131697, at *59 (S.D. Fla. July 23, 2020). Here, Plaintiff and KU entered into a contractual agreement when she paid monies for her education and detrimentally relied on receiving an equal, transferrable education free of retaliation, harassment and discrimination based on her disabilities. (MSJ ¶18-19).

## D.  PLAINTIFF CAN ESTABLISH CLAIMS FOR BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING, BREACH OF EXPRESS WARRANTIES, AND NEGLIGENT MISREPRESENTATION AGAINST KEISER (COUNTS EIGHT, NINE AND TEN)

KU represented that Plaintiff's courses would all be transferable, and that she would be guaranteed a position when she graduated. (MSJ ¶ 20). Plaintiff was advised by other nursing schools that she would not be accepted as a transfer student (Plf. Depo. 134). KU condoned and ratified Defendants' discrimination and retaliation of Plaintiff's disabilities. KU represented that Plaintiff would obtain an education free of discrimination, harassment and retaliation.

## E.  PLAINTIFF CAN ESTABLISH CLAIM FOR DECEPTIVE AND UNFAIR TRADE PRACTICES UNDER FLA. STA. §501.201 (COUNT ELEVEN)

A claim for Florida Deceptive and Unfair Trade Practice has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Carriuolo v. General Motors LLC*, 72 F.Supp.3d 1323, 1325 (S.D. Fla. 2014).  Plaintiff can establish that KU actions in promising and guaranteeing her an equal opportunity to an education, a degree in their BSN Program. (Plf. Depo. 23-24).  Plaintiff can show that she detrimentally relied on KU's actions prior to choosing the program and during her academics at KU. (Plf. Depo. 28-30).  KU did not provide Plaintiff with an equal opportunity to obtain her degree in the BSN program as promised.  KU's actions were

deceptive in nature, unfair and caused Plaintiff actual damages. Plaintiff suffered economic losses related to her tuition, dress code, supplies, books, and transportation and moving expenses. (Plf Depo 202, 207). Plaintiff saw a mental health professional approximately once a week prior to enrolling at KU (Plf Depo 183).  Due to KU's discriminatory, deceptive actions, Plaintiff's visits to her treating mental health professionals continued and increased. (Plf. Depo. 184-85). Throughout her enrollment at KU, Plaintiff continuously was treated for her disabilities, including chronic back pain and headaches. (Plf. Depo. 160-64).

Plaintiff was forced to withdraw from the BSN Program on August 13, 2020. (Plf. Depo. 211).  At the time Plaintiff was forced to withdraw, she had approximately two months left to finish the entire nursing program. (Plf. Depo. 211).  After Plaintiff withdrew from KU, she has continued to have panic attacks. (Plf. Depo 187).  Presently, Plaintiff is suffering from KU's adverse actions by increased panic attacks, anxiety, chronic depression, PTSD and overall mental anguish. (Ex. A). Plaintiff experienced PTSD relating to traumatic experiences while enrolled at KU. (Ex. A). Plaintiff's conditions were exasperated and worsened due to the traumatic experiences and effects of KU's adverse actions. (Ex. A). Plaintiff has been unable to move forward in her life due to the falsification of her grades and transcripts causing her an inability to obtain education and employment. (Ex. A). These events have adversely affected her personal and family life. (Ex. A). Plaintiff's overall mental and physical state were exasperated by Defendants' adverse, discriminatory, retaliatory actions. (Ex. A).

## F.  NEGLIGENCE (COUNT THIRTEEN)

The law is well established that to bring a claim for negligence, a plaintiff must allege (1) duty, (2) breach, (3) cause, and (4) harm to the claimant. *Perry v. Schumacher Grp. of Louisiana*, 809 F. App'x 574, 582 (11th Cir. 2020) (citing *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla.

2007)). In negligence law, the concept of "duty" has two components: (1) the relationship that justifies placing a requirement of care upon the defendant, and (2) the general standard of care that defines the risks to be foreseen by the defendant and the level of care to be imposed upon the defendant. Difficult economic loss cases all seem to examine the relationship between the parties to determine whether it warrants creating a duty to protect economic interests outside contract and statutory law. *Tank Tech, Inc. v. Valley Tank Testing, LLC.*, 244 So. 3d 383, 393 (Fla. Dist. Ct. App. 2018) (*quoting Monroe,* 746 So. 2d at 534, n.6) (citations omitted).

Defendants' knowledge of Plaintiff's disabilities and failure to advise, assist, or approve Plaintiff's accommodations were negligent. Defendants' actions, coupled with their deficient policies and procedures caused Defendants to be negligent. (Plf. Resp. Interr. 16, 17).

The Florida Supreme Court has described the "undertaker's doctrine" as follows: "Whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service -- i.e., the 'undertaker' -- thereby assumes a duty to act carefully and to not put others at an undue risk of harm." *Id. (quoting Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). "The undertaker is subject to liability if: (a) he or she fails to exercise reasonable care, which results in increased harm to the beneficiary; or (b) the beneficiary relies upon the undertaker and is harmed as a result." *Muchnick v. Goihman,* 245 So. 3d 978, 981 (Fla. Dist. Ct. App. 2018*) (quoting Limones v. Sch. Dist. of Lee Cty.*, 161 So. 3d 384, 388 n.3 (Fla. 2015)).  Defendants cannot argue that their actions did not injure the Plaintiff in her obtaining her BSN degree and profession. (Plf. Resp. Interr. 18) Defendants acted with knowing disregard for Plaintiff's emotional threshold and stability.

## V.     CONCLUSION

Plaintiff has met the burden of proving that she is entitled to relief on all claims sought before this honorable Court.  All allegations and facts are to be waived in favor of the Plaintiff in deciding on summary judgment. Inasmuch as, the foregoing facts are in dispute, the Plaintiff will be severely prejudiced if the disputed facts are not presented to a jury for adjudication.  Therefore, the Plaintiff respectfully prays to this honorable Court to deny Defendants' Motion for Summary Judgment in its entirety and set this matter for trial.

Respectfully submitted this the 14th day of April, 2023.

THE LAW OFFICE OF KEITH ALTMAN

/s/ Kimberly R. Dodson
Kimberly R. Dodson, Esq.
kimberlydodson@kaltmanlaw.com
Keith Altman, Esq.
keithaltman@kaltmanlaw.com
33228 West 12 Mile Road - Suite 375
Farmington Hills, Michigan 48331
(248) 987-8929

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via ECF/Electronic filing to all counsel of record on this 14th day of April, 2023.

/s/ Kimberly R. Dodson

17