# EXHIBIT C

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JASMINE HUNGERMAN,

               Plaintiff,

v.

KEISER UNIVERSITY,
PROFESSOR BROOKE
DECKER, PROFESSOR AMBER
GENTRY, DEAN HAROLD
TRINDLE, PROGRAM
DIRECTOR KIMBERLY
PRESTON, and DOES 1-100,

               Defendants.

Case No. 8:21-cv-00318-MSS-JSS

Hon. Mary Scriven

---

## PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES

---

Plaintiff Jasmine Hungerman ("Plaintiff"), through her attorneys, and in accordance with Federal Rules of Civil Procedure 26 and 33, hereby submits the following objections and responses to the

Interrogatories directed to Plaintiff, Jasmine Hungerman, by Defendants Keiser University and Professor Brooke Decker, Professor Amberlyn Gentry, Dean Harold Trindle, <u>Program Director Kimberly Presto, and Does</u> (the "Interrogatories").

<u>PRELIMINARY STATEMENT</u>

1.    Plaintiff is continuing to pursue an investigation and analysis of the facts and the law pertaining to this action and have not yet completed such investigation. Thus, the responses set forth herein are given without prejudice to Plaintiff's right to subsequently produce relevant documents or to add, modify or otherwise change or amend responses made herein. The information contained in these responses is also subject to correction for omissions or errors. A response to any Interrogatory does not constitute an agreement by Plaintiff to any descriptions, allegations, or characterizations contained in any Interrogatory, nor should answers be construed to mean that Plaintiffs necessarily understand what Defendant means by the Interrogatory.

2.    No incidental or implied admissions of fact are intended by the answers below. Plaintiff's submission of these answers does not admit

the relevance or materiality of the subject matter of the requested documents. Plaintiff's objections are made expressly subject to, and without waiver of any objections to competency, relevancy, materiality, privilege, or admissibility of evidence, for any other purpose of any to the answers given herein, or of the subject matter thereof in any proceeding. The objections are also made subject to Plaintiff's right to object to any further discovery involving or relating to the subject matter of the Interrogatories.

3.   Plaintiff's agreement to produce a document or category of documents below does not mean that such a document exists or is in Plaintiff's possession, custody, or control.

4.   This preliminary statement is incorporated into each of the responses set forth below.

<u>General Objections</u>

1.    Plaintiff objects to the "Definitions" set forth in the Interrogatories to the extent that they seek to impose on Plaintiff any duties or requirements in excess of those specified by applicable law or rule,

including, but not limited to, those specified in the Federal Rule of Civil Procedure and any Local Rules of this Court. In lieu of following Defendant's definitions, Plaintiff will

follow the Federal Rules of Civil Procedure and the Local Rules of this Court.

2.     Plaintiff objects to the Interrogatories to the extent that they seek information that is not relevant to the subject matter of this proceeding or is not reasonably calculated to lead to the discovery of admissible evidence.

3.     Plaintiff objects to the Interrogatories as improper and unduly burdensome to the extent that they purport to impose upon Plaintiff any obligations or requirements broader than those set forth in the Federal Rules of Civil Procedure or rules otherwise applicable to this matter.

4.     Plaintiff objects to the Interrogatories to the extent that they call for information that is a matter of public record or otherwise routinely available to all parties.

5.     Plaintiff objects to the Interrogatories to the extent that they are duplicative or designed to harass.

6.     Plaintiff objects to the Interrogatories to the extent that they seek information that is protected from disclosure by the attorney-client privilege, the work product doctrine, or any other privilege or immunity from discovery. Inadvertent disclosure of any such privileged information shall not constitute a waiver of any applicable privilege or any other ground for objecting to discovery with respect to such privileged information.

7.     Plaintiff objects to the Interrogatories to the extent that they seek information regarding documents or materials that are not in Plaintiff's possession, custody, or control.

8.     Plaintiff objects to the Interrogatories to the extent that they state a legal conclusion, or assume or appear to assume that any fact, event, or assumption is true. By responding to any such Interrogatory, Plaintiff does not concede the correctness of any such conclusion or assumption.

9.     Plaintiff objects to the Interrogatories on the ground that they are unduly burdensome and premature because Plaintiff is still conducting discovery and that many of the facts are already known by Defendants. Plaintiff has made a good faith effort to respond to each Interrogatory in a timely manner. Plaintiff's responses herein are necessarily based on the information that is available to Plaintiff on the date of these responses. Plaintiff's investigation is ongoing, and Plaintiff reserves the right to amend, supplement, or withdraw any response or objection to the Interrogatories as he deems necessary or appropriate in light of information or knowledge obtained as discovery progresses in this action.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1**:  List the names, business addresses, dates of employment, and rates of pay regarding all employers, including self-employment, for whom you have worked in the past 10 years.

**RESPONSE TO INTERROGATORY NO. 1**:

Self-employed; Owner and Manager of Nature's Inspirations Unique Jewelry Creations LLC; Dates of Employment: Part-Time December

2020 – June 2021; Address of Business: 1903 Carriage CT. Plant City, FL 33566; Financial loss of approximately $9000.

Hillsborough County Sheriff's Office; Dates of Employment: Full-Time February 2017 – March 2019; Address of Business: 2310 N Falkenburg Rd. Tampa, FL 33619; Approximately $40,000 annually and in addition to health, vision, dental and retirement benefits.

Walden Lake ELC; Dates of Employment: Full-Time June 2014 – June 2016; Address of Business: 2730 Turkey Creek Rd. Plant City, FL 33566; Approximately $25,000 annually in addition to free childcare benefits.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 2**:  List all former names and when you were known by those names. State all addresses where you have lived for the past 10 years, the dates you lived at each address, your Social Security number, your date of birth, and, if you are or have ever been married, the name of your spouse or spouses.

**RESPONSE TO INTERROGATORY NO. 2**:

Jasmine Debbreanna Hungerman: 2011 – present; Jasmine Debbreanna

Killeen: 2001 – 2011; Jasmine Debbreanna Everett (maiden name)

Address: █████████████████████████████████████

████████████████████████████████████████████

████████████████

DOB: ███████████83

Marital Status: Currently married to Anthony Hungerman; married to

Timothy Killeen from 2001 – 2006.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 3**:    Prior to your enrollment at Keiser

University and up to and including the time when the alleged violations

in the Complaint began, did you suffer from any health complications,

including but not limited to stomach issues, headaches, sleep issues,

PTSD?  If so, did you treat or evaluate with anyone? And if so, please

provide their names, addresses, and telephone numbers.

## RESPONSE TO INTERROGATORY NO. 3:

Yes. Plaintiff has suffered from the following health complications within the last 10 years:

Stephen Strait, MD; 1009 W Baker St. Plant City, FL 33563; 813-708-5483. Plaintiff received treatment for back related complications, anxiety, depression, ADD, and PTSD.

Gweneth Davis, MD and Liji George, MD; BayCare Walden Lake Adult; 1601 W Timberlane Ave Plant City, FL 33566; 813-754-4611. Plaintiff received treatment for anxiety, depression, ADD, and PTSD prior to, during and after Keiser University. During and after enrollment, physician has additionally treated Plaintiff for headaches, back and neck complications, stomach/abdominal complications, sleep difficulties, and loss of libido, as well as anxiety, depression, ADD, panic attacks, and PTSD.

South Florida Baptist Hospital; 301 N Alexander St. Plant City, FL 33563; 813-757-1200. Plaintiff received health treatment for prior conditions relating to back pain and PTSD. Plaintiff also received health

treatment during and after enrollment with Keiser University for back and neck pain, abdominal/stomach pain, digestive complications, headaches, sleep problems, depression, anxiety, panic attacks, and PTSD.

Neil Weisman, MD; 605 Medical Care Dr. Brandon, FL 33511; 813-689-4144. Dr. Weisman treated Plaintiff for previous back related complications including back pain and back muscle spasms resulting from sciatica and herniated discs. Plaintiff was referred by her previous primary care physician, Dr. Stephen Strait, to a spinal specialist and pain management doctor, Dr. Neil Weissman. Dr. Weissman performed numerous radio frequency ablation treatments throughout various locations in Plaintiff's spine (Lumbosacral spondylosis, Thoracic back pain, Lumbosacral radiculitis, Mechanical low back pain, and Spasms of back muscles). No further issues or complications since 2016-2017, until during BSN enrollment in 2020 with Keiser University, at which time complications resurfaced.

Greg Den Haese, MD, PhD; 515 S. Kings Ave St. 3100 Brandon, FL 33511; 813-681-9171. Dr. Haese treated Plaintiff for gynecological issues.

Total hysterectomy procedure. Procedure completed at Brandon Hospital 119 Oakfield Dr Brandon, FL 33511, 813-681-5551. Procedure was completed in 2015. No further gynecological issues since completion of procedure in 2015.

Yawer M. Nensey, MD; 508 N. Alexander St. Plant City, FL 33563; 813-759-6607. Dr. Nensey treated Plaintiff for gastroenterology issues. Procedure completed at South Florida Baptist Hospital, 301 N Alexander St Plant City, FL 33563, 813-757-1200. Previous gastroenterology issues related to rectal bleeding resulting in colonoscopy procedure removal of benign sigmoid sessile serrated adenoma polyp. No further gastric issues/complications relating to rectal bleeding. During Plaintiff's BSN enrollment with Keiser University, Plaintiff suffered from and continues to suffer from stomach/abdominal complications and pain, nausea, vomiting, diarrhea, indigestion, bloating, and constipation. Plaintiff has treated with over-the-counter medications and remedies to treat the pain and complications, as well as visits with physician Gwyneth Davis, MD and Liji George, MD at BayCare Walden Lake Adult, 1601 W Timberlane Ave Plant City, FL 33566, 813-754-4611; and also with South Florida

Baptist Hospital, 301 N Alexander St Plant City, FL 33563, 813-757-1200.

Kris Mulhollen, LMHC; BayCare Behavioral Health; 126 Lithia Pinecrest RD, Brandon, FL 33511, 813-689-8828. Kris Mulhollen treated Plaintiff for mental health complications relating to depression, ADD, anxiety, and PTSD. Plaintiff is victim and survivor of childhood sexual and emotional abuse. Plaintiff was highly functioning both emotionally and physically until February 2020 after she endured traumatic emotional abuse and physical trauma complications during her experiences with Keiser University's BSN program.

Panchami Thomas, DNP, PMHNP-BC; New Light Psychiatry; 5302 Florida Ave. S Suite #203 Lakeland, FL 33813, 863-602-7001. Panchami Thomas treated Plaintiff for mental health complications relating to depression, ADD, anxiety, and PTSD. Plaintiff is a victim and survivor of childhood sexual and emotional abuse. She was highly functioning both emotionally and physically until February 2020 after she endured traumatic emotional abuse and physical trauma complications during her experiences with Keiser University's BSN program.

Johnathan Pierre, MD; Northside Gwinnett Hospital; 1000 Medical Center Blvd. Lawrenceville, GA 30046, 678-312-1000. Dr. Pierre has treated Plaintiff for emergency complications relating to severe depression, anxiety, PTSD, panic attacks, and pain in relation to Keiser University.

Gwinnett Psych; 170 Camden Hill Rd., Lawrenceville, GA 30046, 678-226-2295. Plaintiff started seeing this doctor for treatment as of February 8th, 2022, in relation to continuous issues and complications for anxiety, emotional trauma, panic attacks, severe depression, physical complications, ADD, and PTSD in relation to Keiser University.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 4**:  Have you ever been convicted of a crime, other than any juvenile adjudication, which under the law under which you were convicted was punishable by death or imprisonment in excess of 1 year, or that involved dishonesty or a false statement regardless of

the punishment? If so, state as to each conviction the specific crime and the date and place of conviction.

**RESPONSE TO INTERROGATORY NO. 4**:

No.

**INTERROGATORY NO. 5**: Were you suffering from any other physical infirmity, disability, or sickness at the time prior to your enrollment at Keiser University, up to and including the beginning the time when the alleged violations in the Complaint began? If so, what was the nature of the infirmity, disability, or sickness?

**RESPONSE TO INTERROGATORY NO. 5**:

During Plaintiff's enrollment at Keiser University within the BSN program, she began having physical and emotional health complications and issues starting in February 2020 and those complications are continuous. These health complications include extremely severe and traumatic emotional and mental pain, high blood pressure, elevated heart rates, chest pains, lack of sleep, trouble falling and staying asleep,

flashbacks, nightmares, neck pain, back pain, muscle tension pain and spasms, stomach/abdominal pain, nausea, vomiting, diarrhea, indigestion, bloating, constipation, headaches, loss of libido, rashes, hives, shortness of breath, blood vessels swelling and bursting, concentration difficulties, anxiety, depression, panic attacks, PTSD complications, social isolation, fear, lack of pleasure and interest, feelings of humiliation, feelings of helplessness and hopelessness, nervousness, damaged self-esteem, self-doubt, diminished feelings of self-worth, restlessness, distrust, anger, trauma from abandonment, trauma from betrayal, emotional trauma, trauma from emotional abuse, loss and grief, and severe sadness. Plaintiff received health treatment during her BSN enrollment with Keiser University, and continues to.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 6**: Describe with particularity each injury, health complication, mental anguish, humiliation, and/or emotional distress you are praying for as relief in this case, including the specific

body part, the nature of each, anything you contend is permanent, and the affects you claim it has on you.

## RESPONSE TO INTERROGATORY NO. 6:

Plaintiff has endured extremely severe and traumatic emotional and mental pain, high blood pressure, elevated heart rates, chest pains, lack of sleep, trouble falling and staying asleep, flashbacks, nightmares, neck pain, back pain, muscle tension pain and spasms, stomach/abdominal pain, nausea, vomiting, diarrhea, indigestion, bloating, constipation, headaches, loss of libido, rashes, hives, shortness of breath, blood vessels swelling and bursting, concentration difficulties, anxiety, depression, panic attacks, PTSD complications, social isolation, fear, lack of pleasure and interest, feelings of humiliation, feelings of helplessness and hopelessness, nervousness, damaged self-esteem, self-doubt, diminished feelings of self-worth, restlessness, distrust, anger, trauma from abandonment, trauma from betrayal, trauma from negligence, emotional trauma, emotional abuse, loss and grief, and severe sadness. These traumatic experiences have completely and continuously taken over her daily life and activities.

Plaintiff contends the following injuries to be permanent; anxiety, depression, panic attacks, PTSD, trouble falling and staying asleep, nightmares, flashbacks, headaches, high blood pressure, elevated heart rates, neck pain, back pain, muscle tension pain and spasms, feelings of humiliation, trauma from betrayal, trauma from abandonment, trauma from negligence, emotional trauma, trauma from emotional abuse, concentration difficulties, digestive issues, and stomach/abdominal pain.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 7**:  List each item constituting your claim for money spent, loans taken out, financial loss, working every day of the week with almost no stopping, and ending your previous employment and career, as referenced in your Complaint, giving for each item the date incurred, the name and business address of the person or entity to whom each was paid or is owed, the goods or services for which each was incurred, and the amount and method you used in computing said amount.

## RESPONSE TO INTERROGATORY NO. 7:

Please refer to expense documentation for financial loss amounts relating to money spent for tuition, books, supplies, and loans taken out. In addition, other financial losses include personal vehicle mileage utilization, travel, wear and tear, and financial gas loss. Moving expenses relating to Plaintiff's family recently relocating to try and obtain some sort of peace and increased emotional and physical health benefits throughout their lives.

Financial loss related to nursing career employment: According to the U.S. Bureau of Labor Statistics, the average median annual RN salary in 2020 ranged from $80,960-$120,560. Annual wage salary increases based upon registered nurse specialty. This does not include any financial incentives, such as health benefits, sign on bonuses, additional pay for furthering education, and retirement benefits. Projected wage increase of 9%. https://www.bls.gov/oes/current/oes291141.htm.

According to the Federal Government, the average annual registered nurse median salary was $96,694.09 in 2020. *see* https://www.federalpay.org/employees/occupations/nurse.

The specialty that Plaintiff would have been working towards was Registered Nurse Anesthetist. According to the U.S. Bureau of Labor Statistics, the average annual Registered Nurse Anesthetist salary in 2020 was $183,580. This does not include any financial incentives, such as health benefits, sign on bonuses, additional pay for furthering education, and retirement benefits. Projected wage increase of 8%. *see* https://www.bls.gov/ooh/healthcare/nurse-anesthetists-nurse-midwives-and-nurse-practitioners.htm#tab-5.

According to the Federal Government, the average annual Registered Nurse Anesthetist salary was $168,287.36. This does not include any financial incentives, such as health benefits, sign on bonuses, additional pay for furthering education, and retirement benefits. *see* https://www.federalpay.org/employees/occupations/nurse-anesthetist-title-38.

Please refer to classmate communication documents and personal letter documents constituting Plaintiff's claims relating to working every day of the week with almost no stopping.

Please refer to each course curriculum, outlines, syllabi, and requirements constituting Plaintiff's claims relating to working every day of the week with almost no stopping.

Please refer to Plaintiff's previous employment with Hillsborough County Sheriff's Office co-workers and supervisors reference contact list, as well as personal letters of recommendation constituting Plaintiff's claims relating to previous employment, ending previous employment and career for Keiser University's nursing program and nursing career.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 8**:  List each item constituting your claim for any income, benefits, or lost earning capacity you contend to have lost in this case, both past and future, giving for each item the date incurred, the name and business address of the person or entity to whom each was paid or is owed, the goods or services for which each was incurred, and the amount and method you used in computing said amount.

**<u>RESPONSE TO INTERROGATORY NO. 8</u>**:

Plaintiff left her employment with Hillsborough County Sheriff's Office ("HCSO") to pursue a nursing career with Keiser University's nursing program. While employed with HCSO, Plaintiff and her family received additional benefits of dental, vision, and retirement. Plaintiff left HCSO in February 2019 to start her courses at Keiser University as of March 2019.

Loss of Nursing Career, Employment, Income and Benefits: According to the U.S. Bureau of Labor Statistics, the average median annual RN salary in 2020 ranged from $80,960-$120,560. Annual wage salary increases based upon registered nurse specialty. This does not include any financial incentives, such as benefits, sign-on bonuses, and additional pay for furthering education. Projected wage increase of 9%. https://www.bls.gov/oes/current/oes291141.htm

According to the Federal Government, the average annual registered nurse median salary was $96,694.09 in 2020.

https://www.federalpay.org/employees/occupations/nurse

Plaintiff was working towards becoming a Registered Nurse Anesthetist. According to the U.S. Bureau of Labor Statistics, the average annual registered nurse anesthetist salary in 2020 was $183,580. This does not include any financial incentives, such as benefits, sign on bonuses, and additional pay for furthering education. Projected wage increase of 8%.

https://www.bls.gov/ooh/healthcare/nurse-anesthetists-nurse-midwives-and-nurse-practitioners.htm#tab-5

According to the Federal Government, the average annual Registered Nurse Anesthetist salary was $168,287.36. This does not include any financial incentives, such as benefits, sign on bonuses, and additional pay for furthering education.

https://www.federalpay.org/employees/occupations/nurse-anesthetist-title-38

Plaintiff's career path goal was to work with the VA Medical Hospital as a Registered Nurse Anesthetist.

Loss of Education Expenses and Additional Incurred Education Expenses: Keiser University's nursing courses differ from other

Universities. They are not listed as the same courses as other universities and lack in transferability. Therefore, I have to completely start over at the beginning of another nursing program to be able to obtain her BSN degree, license and certifications. Plaintiff has incurred education expenses with Keiser University, and also has to pay for additional expenses incurred with another University, which includes retaking and repaying for courses already completed at Keiser University.

Loss of Education: Plaintiff's University transcript had a 4.0 GPA, originally. After she withdrew from Keiser University her transcript was falsely marked and stated that she withdrew from her courses because she was failing and marked her GPA as a 2.61. These inaccurate markings will prevent Plaintiff from acceptance to another BSN program.

Plaintiff is unable to obtain further education or employment because of Keiser University falsifying official transcript documents and continuous suffering of traumatic events resulting in emotional and physical ailments. Plaintiff has made numerous attempts to try and secure admission into other educational institutions. Some of which include

Hillsborough Community College, University of South Florida, University of Florida, and University of Phoenix. They have all communicated to her the same information, that she is unable to receive federal funding/loans because of her transcript from Keiser University. Including how her GPA at Keiser University went from a 4.0 to a 2.61, as well as how her transcript states that she withdrew because of failing her courses. They have also communicated to her that not only will she not be able to obtain funding, even if she were to pay cash for all of her courses, she would not be accepted into their programs because of unacceptable academic standards. Furthermore, upon speaking with the Federal Aid Information Center, Plaintiff was advised that she would need to fulfill all payments towards her subsidized and unsubsidized loans that she borrowed while attending Keiser University before she could obtain further funding at additional institutions.

Plaintiff is currently unable to obtain and secure employment due to the emotional and physical ailments that she had been continuously suffering because of all of the trauma that she endured and continues to endure.

Plaintiff had to utilize her HCSO retirement account for partial attorney retainment of fees of $4342.39 and paid the rest through her joint checking account with her husband.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 9**:  Has anything been paid or is anything payable from any third party for the damages listed in your Answers to these Interrogatories? If so, state the amounts paid or payable, the name and business address of the person or entity who paid or owes said amounts, and which of those third parties have or claim a right of subrogation.

**RESPONSE TO INTERROGATORY NO. 9**:

Plaintiff has submitted all eligible claims/items to TRICARE Insurance Company. Plaintiff has paid all personal out of pocket responsibilities. To the best of Plaintiff's knowledge, TRICARE has paid all of their portions of claims/items/expenses that have been submitted to them. There are no outstanding balances. All third-party medical providers involved in

medical expenses have been paid. There are no other involved third parties. Plaintiff is unaware if her insurance carrier is entitled to subrogation for any claims/items/expenses paid by them. Plaintiff is unaware if her medical providers are entitled to subrogation for any claims/expenses.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 10**:  List the names and business addresses of each provider (physical health, mental health, emotional health, and/or behavioral health) who has treated, evaluated, or examined you, and each facility where you have received any treatment, evaluation or examination for the injuries for which you seek damages in this case; and state as to each the date of treatment or examination and the injury or condition for which you were examined or treated.

**RESPONSE TO INTERROGATORY NO. 10**:

Stephen Strait, MD; 1009 W Baker St. Plant City, FL 33563; 813-708-5483. Plaintiff received treatment for back related complicacions, anxiety, depression, ADD, and PTSD.

Gweneth Davis, MD and Liji George, MD; BayCare Walden Lake Adult; 1601 W Timberlane Ave Plant City, FL 33566; 813-754-4611. Plaintiff received treatment for anxiety, depression, ADD, and PTSD prior to, during and after Keiser University. During and after enrollment, physician has additionally treated Plaintiff for headaches, back and neck complications, stomach/abdominal complications, sleep difficulties, and loss of libido, as well as anxiety, depression, ADD, panic attacks, and PTSD.   Dates of Treatment: 01/20/2020; 04/16/2020; 04/23/2020; 07/23/2020; 08/06/2020; 08/13/2020; 08/18/2020; 08/19/2020; 10/08/2020; 10/27/2020; 11/27/2020; 12/09/2020; 02/08/2021.

South Florida Baptist Hospital; 301 N Alexander St. Plant City, FL 33563; 813-757-1200. Plaintiff received health treatment for prior conditions relating to back pain and PTSD. Plaintiff also received health treatment during and after enrollment with Keiser University for back

and neck pain, abdominal/stomach pain, digestive complications, headaches, sleep problems, depression, anxiety, panic attacks, and PTSD. Providers: Magge Lakshmi (Radiologist); Hugo D Pestana, NP; Juli G Jeffrey, MD (Associated Pathologists); Neel D Karamsadkar, MD (Radiology); Regina Ason (Radiology). Dates of Treatment: 09/30/2020 – 10/01/2020; 10/19/2020

Neil Weisman, MD; 605 Medical Care Dr. Brandon, FL 33511; 813-689-4144. Dr. Weisman treated Plaintiff for previous back related complications including back pain and back muscle spasms resulting from sciatica and herniated discs. Plaintiff was referred by her previous primary care physician, Dr. Stephen Strait, to a spinal specialist and pain management doctor, Dr. Neil Weissman. Dr. Weissman performed numerous radio frequency ablation treatments throughout various locations in Plaintiff's spine (Lumbosacral spondylosis, Thoracic back pain, Lumbosacral radiculitis, Mechanical low back pain, and Spasms of back muscles). No further issues or complications since 2016-2017, until during BSN enrollment in 2020 with Keiser University, at which time complications resurfaced.

Yawer M. Nensey, MD; 508 N. Alexander St. Plant City, FL 33563; 813-759-6607. Dr. Nensey treated Plaintiff for gastroenterology issues. Procedure completed at South Florida Baptist Hospital, 301 N Alexander St Plant City, FL 33563, 813-757-1200. During Plaintiff's BSN enrollment with Keiser University, Plaintiff suffered from and continues to suffer from stomach/abdominal complications and pain, nausea, vomiting, diarrhea, indigestion, bloating, and constipation. Plaintiff has treated with over-the-counter medications and remedies to treat the pain and complications, as well as visits with physician Gwyneth Davis, MD and Liji George, MD at BayCare Walden Lake Adult, 1601 W Timberlane Ave Plant City, FL 33566, 813-754-4611; and also with South Florida Baptist Hospital, 301 N Alexander St Plant City, FL 33563, 813-757-1200.

Kris Mulhollen, LMHC; BayCare Behavioral Health; 126 Lithia Pinecrest RD, Brandon, FL 33511, 813-689-8828. Kris Mulhollen treated Plaintiff for mental health complications relating to depression, ADD, anxiety, and PTSD as a result of her experiences while at Keiser University's BSN program.

Panchami Thomas, DNP, PMHNP-BC; New Light Psychiatry; 5302 Florida Ave. S Suite #203 Lakeland, FL 33813, 863-602-7001. Panchami Thomas treated Plaintiff for mental health complications relating to depression, ADD, anxiety, and PTSD as a result of her experiences while at Keiser University's BSN program. Dates of Treatment: 01/30/2020; 03/01/2020; 04/08/2020; 05/02/2020; 06/03/2020; 07/29/2020; 09/25/2020; 10/08/2020; 11/09/2020; 01/06/2021; 02/02/2021; 03/09/2021; 05/18/2021; 06/09/2021; 08/03/2021.

Johnathan Pierre, MD and Ankit Patel, MD; Northside Gwinnett Hospital; 1000 Medical Center Blvd. Lawrenceville, GA 30046, 678-312-1000. Dr. Pierre has treated Plaintiff for emergency complications relating to severe depression, anxiety, PTSD, panic attacks, and pain in relation to Keiser University. Dates of Treatment: 01/29/2022

Nasira Rubina, MD; Gwinnett Psychiatry; 170 Camden Hill Rd., Lawrenceville, GA 30046, 678-226-2295. Plaintiff started seeing this doctor for treatment as of February 8th, 2022, in relation to continuous issues and complications for anxiety, emotional trauma, panic attacks,

severe depression, physical complications, ADD, and PTSD in relation to Keiser University. Dates of Treatment: 02/08/2022.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 11**:  List the names and business addresses of all other providers or facilities by whom or at which you have been examined, evaluated, or treated (for physical health, mental health, emotional health, and/or behavioral health) in the past 10 years; and state as to each the dates of examination, evaluation, or treatment and the condition or injury for which you were examined or treated.

**RESPONSE TO INTERROGATORY NO. 11**:

Stephen Strait, MD; 1009 W Baker St. Plant City, FL 33563; 813-708-5483. Plaintiff received treatment for back related complications, anxiety, depression, ADD, and PTSD.

Gweneth Davis, MD and Liji George, MD; BayCare Walden Lake Adult; 1601 W Timberlane Ave Plant City, FL 33566; 813-754-4611. Plaintiff received treatment for anxiety, depression, ADD, and PTSD prior to,

during and after Keiser University. During and after enrollment, physician has additionally treated Plaintiff for headaches, back and neck complications, stomach/abdominal complications, sleep difficulties, and loss of libido, as well as anxiety, depression, ADD, panic attacks, and PTSD. Dates of Treatment: 01/20/2020; 04/16/2020; 04/23/2020; 07/23/2020; 08/06/2020; 08/13/2020; 08/18/2020; 08/19/2020; 10/08/2020; 10/27/2020; 11/27/2020; 12/09/2020; 02/08/2021.

South Florida Baptist Hospital; 301 N Alexander St. Plant City, FL 33563; 813-757-1200. Plaintiff received health treatment for prior conditions relating to back pain and PTSD. Plaintiff also received health treatment during and after enrollment with Keiser University for back and neck pain, abdominal/stomach pain, digestive complications, headaches, sleep problems, depression, anxiety, panic attacks, and PTSD. Providers: Magge Lakshmi (Radiologist); Hugo D Pestana, NP; Juli G Jeffrey, MD (Associated Pathologists); Neel D Karamsadkar, MD (Radiology); Regina Ason (Radiology). Dates of Treatment: 09/30/2020 – 10/01/2020; 10/19/2020

Neil Weisman, MD; 605 Medical Care Dr. Brandon, FL 33511; 813-689-4144. Dr. Weisman treated Plaintiff for previous back related complications including back pain and back muscle spasms resulting from sciatica and herniated discs. Plaintiff was referred by her previous primary care physician, Dr. Stephen Strait, to a spinal specialist and pain management doctor, Dr. Neil Weissman. Dr. Weissman performed numerous radio frequency ablation treatments throughout various locations in Plaintiff's spine (Lumbosacral spondylosis, Thoracic back pain, Lumbosacral radiculitis, Mechanical low back pain, and Spasms of back muscles). No further issues or complications since 2016-2017, until during BSN enrollment in 2020 with Keiser University, at which time complications resurfaced.

Greg Den Haese, MD, PhD; 515 S. Kings Ave St. 3100 Brandon, FL 33511; 813-681-9171. Dr. Haese treated Plaintiff for gynecological issues. Total hysterectomy procedure. Procedure completed at Brandon Hospital 119 Oakfield Dr Brandon, FL 33511, 813-681-5551. Procedure was completed in 2015. No further gynecological issues since completion of procedure in 2015.

Yawer M. Nensey, MD; 508 N. Alexander St. Plant City, FL 33563; 813-759-6607. Dr. Nensey treated Plaintiff for gastroenterology issues. Procedure completed at South Florida Baptist Hospital, 301 N Alexander St Plant City, FL 33563, 813-757-1200. Previous gastroenterology issues related to rectal bleeding resulting in colonoscopy procedure removal of benign sigmoid sessile serrated adenoma polyp. No further gastric issues/complications relating to rectal bleeding. During Plaintiff's BSN enrollment with Keiser University, Plaintiff suffered from and continues to suffer from stomach/abdominal complications and pain, nausea, vomiting, diarrhea, indigestion, bloating, and constipation. Plaintiff has treated with over-the-counter medications and remedies to treat the pain and complications, as well as visits with physician Gwyneth Davis, MD and Liji George, MD at BayCare Walden Lake Adult, 1601 W Timberlane Ave Plant City, FL 33566, 813-754-4611; and also with South Florida Baptist Hospital, 301 N Alexander St Plant City, FL 33563, 813-757-1200.

Kris Mulhollen, LMHC; BayCare Behavioral Health; 126 Lithia Pinecrest RD, Brandon, FL 33511, 813-689-8828. Kris Mulhollen treated

Plaintiff for mental health complications relating to depression, ADD, anxiety, and PTSD. Plaintiff is victim and survivor of childhood sexual and emotional abuse. Plaintiff was highly functioning both emotionally and physically until February 2020 after she endured traumatic emotional abuse and physical trauma complications during her experiences with Keiser University's BSN program.

Panchami Thomas, DNP, PMHNP-BC; New Light Psychiatry; 5302 Florida Ave. S Suite #203 Lakeland, FL 33813, 863-602-7001. Panchami Thomas treated Plaintiff for mental health complications relating to depression, ADD, anxiety, and PTSD. Plaintiff is a victim and survivor of childhood sexual and emotional abuse. She was highly functioning both emotionally and physically until February 2020 after she endured traumatic emotional abuse and physical trauma complications during her experiences with Keiser University's BSN program. Dates of Treatment: 01/30/2020; 03/01/2020; 04/08/2020; 05/02/2020; 06/03/2020; 07/29/2020; 09/25/2020; 10/08/2020; 11/09/2020; 01/06/2021; 02/02/2021; 03/09/2021; 05/18/2021; 06/09/2021; 08/03/2021.

Johnathan Pierre, MD; Northside Gwinnett Hospital; 1000 Medical Center Blvd. Lawrenceville, GA 30046, 678-312-1000. Dr. Pierre has treated Plaintiff for emergency complications relating to severe depression, anxiety, PTSD, panic attacks, and pain in relation to Keiser University. Dates of Treatment: 01/29/2022.

Nasira Rubina, MD; Gwinnett Psychiatry; 170 Camden Hill Rd., Lawrenceville, GA 30046, 678-226-2295. Plaintiff started seeing this doctor for treatment as of February 8th, 2022, in relation to continuous issues and complications for anxiety, emotional trauma, panic attacks, severe depression, physical complications, ADD, and PTSD in relation to Keiser University. Dates of Treatment: 02/08/2022.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 12**:  List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which the witness has knowledge.

## RESPONSE TO INTERROGATORY NO. 12:

Anthony Hungerman

███████████

████████████████

Witness to all of the trauma that Plaintiff endured throughout Keiser University's BSN program. He is witness to all of the physical and emotional health complications that Plaintiff endured and continues to endure. Witness to all of Plaintiff's medical history. He is witness to the Zoom meeting with Ms. Presto, phone conversations between Plaintiff and the instructors, the constant school work with almost no stopping, ending her previous employment career for Keiser University's nursing program and career nursing field, money spent, loans taken out, financial losses, communication with classmates, meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker.

Debbie Everett

███████████

Witness to all of the trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured and continues to endure. Witness to

Plaintiff's health history. Witness to communication with classmates, constant school work with almost no stopping, ending Plaintiff's previous employment career for Keiser University's nursing program and nursing career field, financial losses, money spent, and loans taken out. Aware of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker.

Colleen Rojas

████████████████████

Witness to all of the trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured and continues to endure. Aware of all of Plaintiff's medical history. Aware of communication with classmates, constant school work with almost no stopping, ending of previous employment career for Keiser University's nursing program and nursing career field, financial losses, money spent, and loans taken out. Aware of communication between Plaintiff and the instructors. Aware of meetings between Plaintiff, Dean Trindle, Dean Calvert, Ms. Presto, Professor Decker, and Professor Gentry.

William Sean Massey

████████████
████████████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during and after enrollment. Aware of medical history. Witness to communication with classmates, and constant schoolwork with almost no stopping. Aware of Plaintiff ending her previous employment career for Keiser nursing program and nursing career field, financial losses, money spent, and loans taken out. Witness of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Jerron Dunn

████████████
████████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications Plaintiff endured. Aware of medical history. Witness to communication with classmates, and constant schoolwork with almost no stopping.

Aware of Plaintiff ending her previous employment career for Keiser University's nursing program and nursing career field, financial losses, money spent, and loans taken out. Aware of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Amanda Brooks

████████████████

████████████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during and after her enrollment. Aware of medical history. Witness to communication with classmates, communication with instructors, and constant school work with almost no stopping. Aware of Plaintiff ending her previous employment career for Keiser University's nursing program and nursing career field, financial losses, money spent, and loans taken out. Witness to and aware of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Cynthia Ferguson

████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN  program. Witness to physical and emotional health complications that Plaintiff endured during and after her enrollment. Aware of medical history. Witness to communication with classmates, communication with instructors, and constant schoolwork with almost no stopping. Aware of Plaintiff's ending her previous employment career for Keiser University's nursing program and nursing career field, financial losses, money spent, and loans taken out. Aware of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Morgan Richards

████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during enrollment. Aware of medical history. Witness to communication with classmates, communication with

instructors, and constant schoolwork with almost no stopping. Aware of Plaintiff ending her previous employment career for Keiser University's nursing program and nursing career field, financial losses, money spent, and loans taken out. Aware of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Aliya Robb

███████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during enrollment. Aware of medical history. Witness to communication with classmates, communication with instructors, and constant school work with almost no stopping. Aware of Plaintiff ending her previous employment career for Keiser University's nursing program and nursing career field, financial losses, money spent, and loans taken out. Aware of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Calven Lopez

███████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during enrollment. Aware of medical history. Witness to communication with classmates, communication with instructors, and constant schoolwork with almost no stopping. Aware of Plaintiff ending her previous employment career for Keiser University's nursing program and nursing career field, financial losses, money spent, and loans taken out. Aware of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Alex Perez Hernandez

███████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during enrollment. Aware of medical history. Witness to communication with classmates and instructors, and constant

school work with almost no stopping. Aware of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Prof. Gentry, and Prof. Decker. Witness to Keiser University's BSN program.

Sonya Narcisse

████████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Emotional health complications that Plaintiff endured during enrollment. Witness to communication with classmates, communication with instructors, and constant schoolwork with almost no stopping. Aware of meetings with Dean Trindle, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Brenda Crispin

████████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during enrollment. Witness to communication with classmates, communication with instructors, and constant

schoolwork with almost no stopping. Aware of Plaintiff ending previous employment career for Keiser University's nursing program and nursing career field. Aware of meetings with Dean Trindle, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Jamelle Sorongon

████████████████
████████████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during enrollment. Witness to communication with classmates, communication with instructors, and constant schoolwork with almost no stopping. Aware of meetings with Dean Trindle, Dean Calvert, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN Program.

Michael Walker

████████████████████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during enrollment. Witness to communication with classmates, communication with instructors, and constant schoolwork with almost no stopping. Aware of Plaintiff ending her previous employment career for Keiser University's nursing program and nursing career field. Aware of meetings with Dean Trindle, Ms. Presto, Professor Gentry, and Professor Decker. Witness to Keiser University's BSN program.

Brian & Kimberly Ridgeway

████████████████████████
██████████

Witness to trauma that Plaintiff endured throughout Keiser University's BSN program. Witness to physical and emotional health complications that Plaintiff endured during enrollment. Aware of health history. Aware of Plaintiff ending previous employment career for Keiser University's nursing program and nursing career field. Witness to financial, employment and educational losses.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 13**:  Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

**RESPONSE TO INTERROGATORY NO. 13**:

No.

**INTERROGATORY NO. 14**:   Have you made an agreement with anyone that would limit that party's liability to anyone for any of the damages sued upon in this case? If so, state the terms of the agreement and the parties to it.

**RESPONSE TO INTERROGATORY NO. 14**:

No.

**INTERROGATORY NO. 15**:   List all modifications/accommodations requested by Plaintiff, or anyone on behalf of Plaintiff, of any of the Defendants in this case, before and/or during Plaintiff's enrollment at Keiser University.   Please include the name of the individual to whom these requests were made, the date of each request, whether they were verbal or in writing, whether Plaintiff received a response to the request, the substance of the response, and who on behalf of the Defendants provided the response.

**RESPONSE TO INTERROGATORY NO. 15**:

Prior to the start date of the BSN program, all students had to complete and submit physical assessments, background checks, reference checks, drug screenings, and receive immunizations and vaccinations, of which Plaintiff completed and submitted. Plaintiff communicated directly with Mrs. Presto via phone as well as in person when she submitted her documentation to Mrs. Presto, and advised Mrs. Presto about her medications and conditions, why she was taking them and what they were for in relation to her previous medical history. Plaintiff advised her

of all previous medical history and continuation of mental health treatments and medications. During these times Plaintiff was advised by Mrs. Presto that there would be no complications relating to her medications or medical history. Mrs. Presto stated that she would handle and take care of everything. Mrs. Presto also stated to Plaintiff that according to her review of Plaintiff's reference history, prior excellent academic records with both previous colleges, as well as with her other classes at Keiser University, it was evident to her that Plaintiff was very intelligent and effectively able to manage and excel academically. Mrs. Presto further advised Plaintiff that if she were to somehow encounter any issue that she needed help with, to let her know and that she would take care of any issue that Plaintiff was having. During in-person meetings, phone conversations, emails, and Zoom meetings with Mrs. Presto, Plaintiff advised her about all of the emotional and physical sufferings and traumas that she was enduring because of all of the complications from the continued battles of discrimination, retaliation, harassment and abuse. Plaintiff reminded Mrs. Presto about her previous mental health history and the worsening of her mental health

status and worsening physical problems. Plaintiff and Mrs. Presto communicated about the causes of the complications that she was experiencing, as well as the continuity and how Plaintiff was experiencing no signs of relief and increased emotional and physical complications. Plaintiff requested the help of Mrs. Presto numerous times. Plaintiff also requested to have another instructor and advised Mrs. Presto that she did not feel safe, and that she felt unsafe specifically around Prof. Decker. The following are documented dates of Plaintiff's communications with Mrs. Presto regarding her requests for modification/accommodation: 12/11/2019: The day of Plaintiff's doctors appointment with Gwyneth Davis, MD of Walden Lake Adult Care Baycare Plaintiff notified Mrs. Presto immediately after the appointment via phone; 12/13/2019: The day that Plaintiff had her PPD reading completed in her doctors office with Gwyneth Davis of Walden Lake Adult Baycare, she brought all of her paperwork to Mrs. Presto's office and hand-delivered and spoke with Mrs. Presto in person regarding all medical and health information; 01/13/2020: The first day of class Plaintiff resubmitted all paperwork and hand-delivered to Mrs. Presto

and spoke with her because everything was due by or on the first day of class and Plaintiff wanted to make sure that she didn't need anything else, had everything and that there were not any problems with any of her health information or paperwork; 2/1/2020 communicated via phone and in person in Mrs. Presto's office; 2/3/2020 communicated in-person with Mrs. Presto in her office; 2/4/2020 communicated with Mrs. Presto in-person; 2/7/2020 via Mrs. Presto's office in-person; 2/14/2020 via Mrs. Presto's office in-person; 2/21/2020 via Presto's office in-person; 2/24/2020 via Mrs. Presto's office in-person; 2/28/2020 communicated with Mrs. Presto via phone and in-person; 3/2/2020 communicated with Mrs. Presto in-person; 3/3/2020 communicated with Mrs. Presto in-person; 3/9/2020 communicated with Mrs. Presto and Mrs. Gentry in-person with Aliya Robb, Cynthia Ferguson, Morgan Richards, and Amanda Brooks; 3/10/2020 communicated with Mrs. Presto in-person; 3/5/2020 communicated in-person with Mrs. Presto and Dean Trindle in Dean Trindle's office; 3/28/2020 communicated with Mrs. Presto via email; 3/29/2020 communicated via text message with Mrs. Presto; 3/30/2020 met with Mrs. Presto at 1330 hours in her office; 3/31/2020 met with Mrs.

Presto and Mrs. Decker and communicated in classroom; 4/6/2020, 4/13/2020, 4/14/2020 via email communication with Mrs. Presto; 4/15/2020 met with Mrs. Presto in-person in her office; 4/16/2020 via text and phone communication with Mrs. Presto; 4/19/2020 phone communication with Mrs. Presto; 4/20/2020 phone communication with Mrs. Presto; 6/3/2020 via phone communication with Mrs. Presto; 6/23/2020 via phone communication with Mrs. Presto; 7/2/2020 via phone communication with Mrs. Presto; 7/28/2020 via phone communication with Mrs. Presto; 8/5/2020 via phone and email communication with Mrs. Presto; 8/7/2020 via email and phone communication with Mrs. Presto and Mrs. Gentry; 8/13/2020 via text message, email and zoom video communication with Mrs. Presto.

Plaintiff communicated her concerns to Dean Trindle via in-person meetings and phone conversations. Plaintiff advised him about the emotional and physical sufferings and traumas that she was enduring because of all of the complications from the continued battles of discrimination, retaliation, harassment and abuse. During their initial communication, she advised him that she had also been communicating

with Mrs. Presto about everything and that she was seeking his help because of the continuation and worsening of her emotional health and physical complications. Plaintiff also advised Dean Trindle that she was receiving no signs of relief. Plaintiff advised Dean Trindle about her prior mental health history and the worsening of her mental health status and physical problems. Through further in-person meetings and phone conversations, they communicated again about the causes of her traumatic experiences, their continuations, worsening of Plaintiff's emotional and physical complications, and that she was receiving no signs of relief. Plaintiff stated to him several times that she needed help. The following are documented dates of Plaintiff's communications with Dean Trindle regarding her requests for modification/accommodation: 3/5/2020 phone call and text with Dean Trindle and in-person with Dean Trindle and Mrs. Presto in Dean Trindle's office at 1330hr; 3/30/2020 in person with Dean Trindle; 4/14/2020 phone call with Dean Trindle; 4/14/2020 in-person in Dean Trindle's office; 8/13/2020 Plaintiff tried to communicate with Dean Trindle in-person, however, he was unavailable, so she communicated and requested help from Dean Sandy Calvert. Dean

Calvert and Plaintiff communicated via in-person, phone and text message.

Plaintiff communicated her concerns to Professor Decker. During in-person meetings, phone conversations and emails with Professor Decker, that also included Mrs. Presto, Plaintiff communicated about all of the emotional and physical sufferings and traumas that she was enduring because of all of the complications from the continued battles of discrimination, retaliation, harassment and abuse that she was enduring because of Professor Decker. Plaintiff reminded them about her previous mental health history and the worsening of her mental health status, as well as worsening physical problems. Plaintiff communicated further about the causes of the complications that she was experiencing, as well as the continuity and how she was experiencing no signs of relief. Plaintiff advised them about her increased emotional and physical complications. Plaintiff requested help from both Professor Decker and Mrs. Presto numerous times. During these in-person meetings, phone conversations and emails with Professor Decker, Plaintiff advised and explained to her how she was making Plaintiff feel emotionally and

physically because of her behavior and actions towards Plaintiff. During several other communications, Plaintiff advised Professor Decker that her emotional and physical health conditions were worsening and asked for relief. Plaintiff requested help and assistance several times. Plaintiff also advised Professor. Decker several times that she was communicating with Mrs. Presto and Dean Trindle and was requesting their help and assistance as well. The following are documented dates of Plaintiff's communications with Professor Decker regarding her requests for modification/accommodation: 2/18/2020 communicated in-person before and after class; 2/21/2020 in-person after class; 2/26/2020 in-person after class; 3/4/2020 in-person after class; 3/25/2020 email and in-person after class; 3/28/2020 email and phone call with Mrs. Decker and with Mrs. Presto via email and phone; 3/31/2020 met with Mrs. Presto and Mrs. Decker and communicated issues in classroom; 4/7/2020 in-person; 4-20-2020 in-person after class and via email; 6/18/2020 in-person during clinicals; 6/22/2020 via email and phone; 6/25/2020 in-person at clinicals; 7/9/2020 in-person during clinicals; 7/16/2020 in-person at clinicals; 7/24/2020 via phone; 7/31/2020 communicated issues with Mrs. Decker;

8/3/2020 communicated issues with Mrs. Decker and Mrs. presto via phone and email; 8/10/2020 via email and phone; 8/12/2020 via email and phone.

Plaintiff communicated her concerns to Professor Gentry via phone conversations and personal meetings. Plaintiff advised Professor Gentry about all of the complications, challenges and hardships that she was experiencing throughout the BSN program. Plaintiff advised Professor Gentry about her mental health history. Plaintiff communicated to Professor Gentry about her concerns relating to her treatments and behaviors towards Plaintiff in relation to discrimination, retaliation, and her relationship with Professor Decker. Plaintiff advised her about all of the emotional and physical sufferings and traumas that she was enduring because of all of the complications from the continued battles of discrimination, retaliation, harassment and abuse. Plaintiff asked for Professor Gentry's help and assistance. Plaintiff communicated via email and in-person to Professor Gentry regarding grading complications and discrimination. Plaintiff also advised her that she was communicating with Mrs. Presto and Dean Trindle and was requesting their help. The

following are documented dates of Plaintiff's communications with Professor Gentry regarding her requests for modification/accommodation: 2/11/2020 communicated in-person after class in the hallway by Professor Gentry's office; 2/14/2020 in-person after class; 2;18;2020 in-person after class in the hallway by her office; 3/9/2020 communicated with Mrs. Presto and Mrs. Gentry in-person with Aliya Robb, Cynthia Ferguson, Morgan Richards, and Amanda Brooks in Mrs. Presto's office; 5/20/2020 via email and phone; 5/26/2020 via email; 7/25/2020 via email and phone; 8/2/2020 via email; 8/6/2020 via email; 8/7/2020 via email and phone communication with Mrs. Presto and Mrs. Gentry.

Plaintiff communicated her concerns to Professor Johnson and Professor John. These professors were aware of Plaintiff's mental health history on or about the end of January 2020 through the beginning of February 2020, when they discussed Plaintiff and classmate Jerron Dunn's communications. When Plaintiff needed any help or assistance with anything involving her courses due to her health issues, these Professors

made accommodations by allowing her to take a test, quiz or do an assignment during a different time.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 16**:  List any of the actions taken by each Defendant to violate each statute here alleged.

**RESPONSE TO INTERROGATORY NO. 16**:

Mrs. Presto: Negligence of Mrs. Presto caused Plaintiff to suffer traumatic emotional and physical distress and health complications. Mrs. Presto's negligence in stopping continued retaliation and harassment against Plaintiff caused her to suffer further emotional and physical distress and health complications. Mrs. Presto failed to provide help to Plaintiff when Plaintiff requested help. Mrs. Presto Failure to take any immediate steps or appropriate actions to attempt to end the harassment, bullying and retaliation that Plaintiff was receiving. Mrs. Presto engaged in emotional abuse, emotional and physical trauma, manipulation, gaslighting, and abandonment against Plaintiff. Mrs.

Presto engaged in grade tampering. Mrs. Presto engaged in retaliatory actions against Plaintiff and falsifying official documents. Mrs. Presto engaged in Discrimination against Plaintiff by not allowing her equal educational opportunities the same as other students. Mrs. Presto facilitated in creating and maintaining a hostile and unsafe environment. Mrs. Presto engaged in coercion by forcing Plaintiff to continue being traumatized and abused after Plaintiff stated she felt unsafe with my instructor.

Professor Decker: Professor Decker engaged in harassment, bullying, demeaning behavior, retaliation, disrespectful behavior, grade tampering, discrimination, emotional invalidation, emotional abuse, emotional and physical trauma, creating and maintaining a hostile and unsafe environment. Professor Decker falsified grades and gave false reasons for Plaintiff ending her enrollment with Keiser University on assignments and her official Transcript. Professor Decker engaged in discrimination against Plaintiff by knowing about her health history and not providing accommodation when Plaintiff asked for help on numerous occasions, after Plaintiff had explained to her about her continuous

emotional and physical health suffering. Professor Decker also engaged in discrimination by not allowing Plaintiff equal educational opportunities the same as that of other students.

Dean Trindle: Dean Trindle engaged in Negligence by failing to aid in stopping continued retaliation and harassment against Plaintiff. Dean Trindle was negligent in his failure to provide help or accomotations when Plaintiff was asking for it. Dean Trindle engaged in retaliation against Plaintiff by facilitating the input of false grades and false reasons for Plaintiff ending enrollment with Keiser University on Plaintiff's Transcript. Dean Trindle engaged in fostering a hostile and unsafe environment for Plaintiff. Dean Trindle engaged in discrimination against Plaintiff by knowing about her health history and not providing accommodation when asked to by Plaintiff. Dean Trindnle engaged in discrimination by not allowing Plaintiff equal educational opportunities the same to Plaintiff as to other students.

Professor Gentry: Professor Gentry engaged in creating and maintaining a hostile environment, bullying, discrimination, and retaliation. Professor Gentry engaged in discrimination against Plaintiff by not

allowing her equal educational opportunities the same as that of other students. Professor Gentry failed to provide accommodation to Plaintiff when she asked. Professor Gentry engaged in tampering of Plaintiff's grades and falsifying official documents.

Keiser University: Keiser University engaged in negligence, harassment, bullying, and creating and maintaining a hostile and unsafe environment for Plaintiff. Keiser University engaged in coercion by requiring Plaintiff to continue with an instructor that subjected her to abuse and an unsafe environment. Keiser University engaged in discrimination against Plaintiff by not allowing her equal educational opportunities the same as other students. Keiser University engaged in retaliation against Plaintiff falsifying grades and reasons for Plaintiff ending her enrollment with Keiser University on assignments and her Transcript.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 17**: Describe each act by each Defendant that was allegedly negligent.

**RESPONSE TO INTERROGATORY NO. 17**:

Mrs. Presto: Negligence of Mrs. Presto caused Plaintiff to suffer traumatic emotional and physical distress and health complications. Mrs. Presto's negligence in stopping continued retaliation and harassment against Plaintiff caused her to suffer further emotional and physical distress and health complications. Mrs. Presto failed to provide help to Plaintiff when Plaintiff requested help. Mrs. Presto Failure to take any immediate steps or appropriate actions to attempt to end the harassment, bullying and retaliation that Plaintiff was receiving. Mrs. Presto engaged in emotional abuse, emotional and physical trauma, manipulation, gaslighting, and abandonment against Plaintiff. Mrs. Presto engaged in grade tampering. Mrs. Presto engaged in retaliatory actions against Plaintiff and falsifying official documents. Mrs. Presto engaged in Discrimination against Plaintiff by not allowing her equal educational opportunities the same as other students. Mrs. Presto facilitated in creating and maintaining a hostile and unsafe environment. Mrs. Presto engaged in coercion by forcing Plaintiff to continue being

traumatized and abused after Plaintiff stated she felt unsafe with my her instructor.

Professor Decker: Professor Decker engaged in harassment, bullying, demeaning behavior, retaliation, disrespectful behavior, grade tampering, discrimination, emotional invalidation, emotional abuse, emotional and physical trauma, creating and maintaining a hostile and unsafe environment. Professor Decker falsified grades and gave false reasons for Plaintiff ending her enrollment with Keiser University on assignments and her official Transcript. Professor Decker engaged in discrimination against Plaintiff by knowing about her health history and not providing accommodation when Plaintiff asked for help on numerous occasions, after Plaintiff had explained to her about her continuous emotional and physical health suffering. Professor Decker also engaged in discrimination by not allowing Plaintiff equal educational opportunities the same as that of other students.

Dean Trindle: Dean Trindle engaged in Negligence by failing to aid in stopping continued retaliation and harassment against Plaintiff. Dean Trindle was negligent in his failure to provide help or accomotations

when Plaintiff was asking for it. Dean Trindle engaged in retaliation against Plaintiff by facilitating the input of false grades and false reasons for Plaintiff ending enrollment with Keiser University on Plaintiff's Transcript. Dean Trindle engaged in fostering a hostile and unsafe environment for Plaintiff. Dean Trindle engaged in discrimination against Plaintiff by knowing about her health history and not providing accommodation when asked to by Plaintiff. Dean Trindnle engaged in discrimination by not allowing Plaintiff equal educational opportunities the same to Plaintiff as to other students.

Professor Gentry: Professor Gentry engaged in creating and maintaining a hostile environment, bullying, discrimination, and retaliation. Professor Gentry engaged in discrimination against Plaintiff by not allowing her equal educational opportunities the same as that of other students. Professor Gentry failed to provide accommodation to Plaintiff when she asked. Professor Gentry engaged in tampering of Plaintiff's grades and falsifying official documents.

Keiser University: Keiser University engaged in negligence, harassment, bullying, and creating and maintaining a hostile and unsafe environment

for Plaintiff. Keiser University engaged in coercion by requiring Plaintiff to continue with an instructor that subjected her to abuse and an unsafe environment. Keiser University engaged in discrimination against Plaintiff by not allowing her equal educational opportunities the same as other students. Keiser University engaged in retaliation against Plaintiff falsifying grades and reasons for Plaintiff ending her enrollment with Keiser University on assignments and her Transcript.

Plaintiff reserves the right to supplement this response as appropriate.

**INTERROGATORY NO. 18**:  List all your damages alleged to have been incurred by you as a result of the actions of each Defendant.

**RESPONSE TO INTERROGATORY NO. 18**:

Damages Plaintiff has suffered include but are not limited to, severe emotional trauma and pain, extremely high-stress, high blood pressure, elevated heart rates, chest pains, shortness of breath, lack of sleep, trouble falling and staying asleep, restlessness, nightmares, flashbacks, headaches, neck pain, back pain, stomach pain, nausea, vomiting,

diarrhea, indigestion, loss of libido, rashes, hives, blood vessels swelling and bursting, severe sadness, social isolation, nervousness, fear, lack of pleasure and interest, emotional abuse, damage of self-esteem, humiliation, distrust, anger, concentration difficulties, severe anxiety, severe depression, panic attacks, severe complications relating to PTSD, manipulation, gaslighting, harassment, retaliation, discrimination, financial loss, abandonment, grief, loss of employment, loss of education, loss of future education, loss of career, falsification of personal records, denial of equal education opportunity.

Plaintiff reserves the right to supplement this response as appropriate.

Dated: March 17, 2022

Respectfully Submitted,

/s/ Keith Altman
Keith Altman, Esq.
The Law Office of Keith Altman
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorney for Plaintiff Hungerman*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 17, 2022, I caused to be served the foregoing document on all Parties to this action by electronic mail.

<u>/s/ Keith Altman</u>