**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JASMINE HUNGERMAN,**

**Plaintiff,**

**v.** **Case No: 8:21-cv-318-MSS-JSS**

**KEISER UNIVERSITY, BROOKE DECKER, KIMBERLY PRESTO, JOHN DOE 1-100, AMBERLYN GENTRY and ESTATE OF HAROLD TRINDLE,**

**Defendants.**

---

# ORDER

**THIS CAUSE** comes before the Court for consideration of Defendants' Motion for Summary Judgment, (Dkt. 57), Plaintiff's response in opposition thereto, (Dkt. 61), and Defendants' reply in support. Upon consideration of all relevant filings, case law, and being otherwise fully advised, Defendants' Motion for Summary Judgment is **GRANTED in PART.**

## I. BACKGROUND

### A. FACTUAL BACKGROUND

*i. UNDISPUTED FACTS*

1. In January 2020, Plaintiff Jasmine Hungerman ("Plaintiff") enrolled in the Bachelor of Science in Nursing (BSN) program at Keiser University. (Dkt. 57-6; Dkt. 62 at ¶ 1)

2. Defendants Brooke Decker ("Professor Decker") and Amberlyn Gentry ("Professor Gentry") were Plaintiff's professors in the BSN program. (Dkt. 62 at ¶ 2)

3. Defendant Kimberly Presto was the Director of the BSN program at the Lakeland Campus. (Id. at ¶ 3)

4. Harold Trindle was the then-dean of the BSN program. (Id. at ¶ 4)

5. On March 5, 2020, Plaintiff met with Dean Trindle and Director Presto.[1] (Dkt. 1 at ¶ 34)

6. On August 13, 2020, Plaintiff met with Director Presto on Zoom. (Dkt. 60)

7. Plaintiff began the Zoom meeting with the following statement: "I have been having some complications with Ms. Decker again . . . so basically what is happening is I feel that I am not being treated like the other classmates again in the sense of Ms. Decker seems to be, in my opinion, giving me a lot more, uh higher workload so to speak. As well as when I [am] turning things in to her, they are not

---

[1] Plaintiff's Third Amended Complaint alleges she met with Director Presto and Dean Trindle on March 5, 2020. That allegation is supported by Plaintiff's response to Interrogatory Number 15, wherein Plaintiff restates the same. While Defendants deny the veracity of the facts in Plaintiff's interrogatories, Defendant Kimberly Presto acknowledged a meeting occurred between Plaintiff, Director Presto, and Dean Trindle. (Dkt. 60) Neither Party has offered a recording or transcript to reflect the substance of that meeting. Therefore, the Court accepts as an undisputed fact that such a meeting occurred.

right, this isn't right, this isn't right, redo this, redo this, redo this . . . When other classmates hand her the same thing that I am handing her and she tells them, oh well next time just make sure you put the time on there and then gives them a 100% and they don't have to redo it six or seven times." (Id. at 01:41-02:45)

8. Plaintiff then stated to Director Presto what Plaintiff considered to be her breaking point. (Id. at 02:45-3:55) ("Um, last night was kind of my breaking point and that was I received an email from Ms. Decker, um, in response to the email two days ago that I sent to her giving her another nurse's note and concept map and um her email . . . it says, Jasmine as you can see in the nurse's note that it does not reflect the assignment requirements listed above. It identifies completing a head-to-toe examination which in this nurse's note shows no documentation of. In regards to your assignments, both nurses notes were still due for completion and resubmission. At this point in time, I recommend that you complete your nurse's notes during your next two simulations one per day to complete this portion and have the necessary patient assessment findings to successfully complete this task, Ms. Decker. Um, now as for the head-to-toe assessment, I had already completed the head-to-toe assessment nurse's note and gave that to her.")

9. Plaintiff then explained to Director Presto what was causing her frustration. (Id. at 3:56-6:01) ("Um, so, when I saw that last night I was just very frustrated because I missed one clinical. I did miss one clinical and it's because my daughter was having issues. Um, and going back to Miss Decker, in relation [to] my daughter. I was communicating with Miss Decker and Dr. John about my youngest

because I was in and out of the pediatrician's office and the emergency room with her, not too long ago, because she was battling a severe bladder infection and she had something. They thought she had appendicitis and the ER physician ended up saying she had [adenitis] mesenteric because they couldn't find her appendix and all her lymph nodes were swollen, and everything else, and then to top it all off, she is allergic to the medication. So, long story short, I was trying to do all of this and that and I was communicating with Ms. Decker and I was so worried about Ms. Decker in particular, I even communicated an email while I was in the emergency room. And I told her look, I know I've got this discussion coming up. I've got this going on, I promise I'm go[ing] [to] get to it. I just wan[t] [to] let you know this is what I'm dealing with right now and so I turned in my discussion board one day late. Granted, I turned it in one day late. Um, however, of course, you know, she sent me the grade back and deducted points and says per rubric guidelines I deducted points for being late, yeah, so um, I was late. Unfortunately, my daughter comes first. Um, but also just going on with this continued workload, as far as I am aware I was only missing one assignment, and Ms. Decker wouldn't even let me come to clinicals that day [be]cause I offered to come half a day and she told me she was not going to give me credit for it even if I did come half a day. So, I told her well then there is really no sense in me wasting gas to come over there. . .")

10. Plaintiff then explained several instances involving Decker's behavior toward all students – the number of hours to complete an assignment measured against the number of hours in clinical, (Id. at 6:02-6:30) – and toward Plaintiff specifically,

Id. at 6:02-6:35, receiving unclear instructions on assignment; 6:36-9:52, having to redo assignments, 9:53-10:56; experiencing "reactions" and attitude during simulations, 22:30-24:02.

11. Plaintiff also explained her frustration with Dr. Gentry's wiki assignments to Director Presto. (Id. at 11:15-19:50)

12. Later in that meeting, Director Presto acknowledged a prior meeting that occurred with Plaintiff, Presto and Dean Trindle. Presto then asked Plaintiff for a refresher on what it was that Plaintiff believed was lingering between Plaintiff and Ms. Decker. (Id. at 25:45-26:06)

13. Plaintiff responded to Director Presto that Plaintiff would "never be in this situation if [she] would have never become class president. I know that for sure." (Id. at 26:08-26:19)

14. At the end of the Zoom meeting, Plaintiff stated "I do not feel comfortable being around Ms. Decker at all . . . So if I do come on Tuesday and Thursday, I [am] go[ing] to need to be around a different instructor." (Id. at 47:36-47:51)

15. On August 24, 2020, Plaintiff voluntarily withdrew from Keiser University. (Id. at ¶ 5)

16. Plaintiff claims she later inquired about enrollment in other BSN programs, but she claims the other universities informed her that her GPA impeded her enrollment. (Id. at ¶ 13)

17. Plaintiff was deposed on September 28, 2022.[2] (Dkt. 57-1)

### B. PROCEDURAL BACKGROUND

On February 10, 2021, Plaintiff commenced this federal action. (Dkt. 1) On December 15, 2021, Plaintiff filed the operative complaint, the Third Amended Complaint. (Dkt. 40) Plaintiff asserts thirteen causes of actions against the Defendants: (1) failure to accommodate in violation of Title III of the ADA; (2) failure to accommodate in violation of Section 504 of the Rehabilitation Act; (3) retaliation in violation of Title V of the ADA; (4) retaliation in violation of Section 504 of the Rehabilitation Act; (5) interference in violation of Title III of the ADA; (6) interference in violation of Section 504 of the Rehabilitation Act; (7) breach of contract; (8) breach of the duty of good faith and fair dealing; (9) breach of express warranties; (10) negligent misrepresentation; (11) deceptive and unfair trade practices in violation of Fla. Stat. § 501.201; (12) unjust enrichment; and (13) negligence. (Id.) Defendants have moved for summary judgment. (Dkt. 57) Plaintiff defends against summary judgment principally on the contention that she made requests for ADA accommodations and, even if she did not, "there was no need for her to formally request a specific accommodation when the Defendants knew and Plaintiff had informed them of her disabilities." (Dkt. 61) Plaintiff also argues Defendants' ADA policies and procedures

[2] The Parties have included certain statements from Plaintiff's deposition as undisputed facts. The Court can accept that Plaintiff made such a statement as an undisputed fact; however, the veracity of the underlying statement cannot be established in this way. The Court therefore limits the undisputed facts included in this Order accordingly.

were deficient and no professor, administrator, or decisionmaker advised Plaintiff that she had to formally request an accommodation. This matter is ripe for consideration.

## II. LEGAL STANDARD

Summary judgment is appropriate where the movant can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fennell v. Gilstrap, 559 F.3d 1212, 1216 (11th Cir. 2009) (citing Welding Servs., Inc. v. Forman, 509 F.3d 1351, 1356 (11th Cir. 2007)). Which facts are material depends on the substantive law applicable to the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

Evidence is reviewed in the light most favorable to the non-moving party. Fennell, 559 F.3d at 1216 (citing Welding Servs., Inc., 509 F.3d at 1356). A moving party discharges its burden on a motion for summary judgment by showing or highlighting to the Court that no evidence supports the non-moving party's case. Denney v. City of Albany, 247 F.3d 1172, 1181 (11th Cir. 2001) (citation omitted).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d

984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." FED. R. CIV. P. 56(e).

## III. DISCUSSION

### A. Failure to Accommodate Claims

Defendants argue they are entitled to summary judgment on Plaintiff's accommodation claims because Plaintiff cannot establish that she demanded a reasonable accommodation stemming from a disability. (Dkt. 57 at 8-12) In support of their position, Defendants rely on three pieces of evidence. The first is Plaintiff's deposition testimony, in which she admitted she never submitted a Request for Adjustment/Accommodation or any document from a medical provider advising that she required accommodations. (Dkt. 57 at 151:10-19) Second, Defendants rely on a signed document in which Plaintiff (1) acknowledged she read the performance requirements and essential job functions of a graduate nurse and understood the nature of the demands and (2) represented that she could perform the physical performance standards accurately, safely, and effectively in a reasonable amount of time without accommodations. (Dkt. 57-2 at 4) Third, Defendants rely on the Keiser University Accessibility Guide that explains the procedure for students who wish to seek accommodations based on a disability. Defendants argue that, even if the Court determined Plaintiff requested an accommodation, the requested accommodation was

unreasonable. (Dkt. 57 at 12) Plaintiff argues in response that "there was no need for her to formally request a specific accommodation when the Defendants knew and she had informed them of her disabilities." (Dkt. 61 at 13) The Court finds Plaintiff has offered no evidence from which a jury could conclude she requested a reasonable accommodation.

To prevail on a failure to accommodate claim under the Rehabilitation Act or the ADA, a plaintiff must prove three elements: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." See L.E. ex rel. Cavorley v. Superintendent of Cobb Cnty. Sch. Dist., 55 F.4th 1296, 1302 (11th Cir. 2022); Awodiya v. Ross Univ. Sch. of Med., 391 F. Supp. 3d 1098, 1105 (S.D. Fla. 2019), aff'd in part, rev'd in part, 857 F. App'x 533 (11th Cir. 2020).

In the academic setting, "[t]he initial burden is on the student, who must identify her disability and make a case for specific accommodations." Forbes v. St. Thomas Univ., Inc., 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010). The "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." See Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999). Judges in this District and Circuit have excused the specific demand requirement when a plaintiff can establish the need for an accommodation is obvious. See Schwarz v. The Villages Charter Sch., Inc., 165 F.

Supp. 3d 1153, 1173 (M.D. Fla. 2016) (collecting cases); Todd v. Carstarphen, 236 F. Supp. 3d 1311, 1328 n.33 (N.D. Ga. 2017). These exceptional cases and the cases referenced therein involved plaintiffs whose disabilities were open and obvious (e.g., deaf, on dangerous psychotropic medications, or visionless). Plaintiff's latent disability of PTSD does not fall within this exception.

Here, Plaintiff offers two pieces of evidence in opposition to summary judgment.[3] First, Plaintiff relies on her response to Defendants' interrogatory number 15. Her interrogatory response cites several dates and times Plaintiff contends she communicated with Keiser University employees regarding requests for modifications or accommodations. (Dkt. 61-3)

However, Plaintiff testified on September 28, 2022, that she never submitted any documentation from a medical provider or an accommodation request form. Plaintiff further testified that her accommodation request was to have another instructor proctor the tests and simulations. (Dkt. 57-1 at 90:1-5) Plaintiff's testimony therefore contradicts Plaintiff's interrogatory response. (Id.)

Second, Plaintiff specifically relies on her deposition testimony. During her deposition, Plaintiff testified that she suffers from PTSD. (Dkt. 57-1 at 90) Plaintiff was

---

[3] Plaintiff also offered a letter from Dr. Nasira Rubina, who has presumably treated Plaintiff since 2/28/2022. (Dkt. 61-1) This Court finds the letter unpersuasive because Plaintiff has offered no evidence that Dr. Rubina treated Plaintiff during the relevant time period. Plaintiff also offered Defendants' expert report from Dr. David A. Fishbain to show Plaintiff is a qualified person and suffers from medical conditions – a disability – existing before she entered the nursing program. (Dkt. 61-2) While Defendants' expert report helps measure Plaintiff's disability, Defendants do not challenge whether or not Plaintiff is a qualified individual or that she suffers from a disability, thus the Court assumes these elements are met for purposes of resolving the pending motion.

asked, "Did you tell Director Presto that the reason you wanted another instructor to proctor the tests and simulations is because of your PTSD?" (Id.) Plaintiff responded in relevant part "During that meeting, no. I stated that it was because I felt unsafe, that being around Ms. Decker made me feel unsafe, and because I was having panic attacks ***because of my anxiety***." (Id. (emphasis added))

Viewing the evidence in the light most favorable to Plaintiff, her interrogatory responses and deposition testimony are insufficient to create a genuine dispute of material fact. Eleventh Circuit precedent requires that any accommodation request be tied to a student's disability. Plaintiff's Third Amended Complaint alleges only one request for accommodation, which occurred during the Zoom meeting with Director Presto. (Dkt. 40 at ¶ 74) While Plaintiff's response to interrogatory number 15 attempts to list her encounters and communications with Keiser University employees, Plaintiff failed to include any evidence concerning the substance of any referenced conversation, encounter, or meeting. Because Plaintiff's testimony and her allegations in the operative complaint contradict her interrogatory response, and her response is non-specific, the response is insufficient to create a dispute of fact as to whether she made an accommodation request. For this reason alone, Defendants are, therefore, entitled to summary judgment on Counts I and II.

Finally, even assuming Plaintiff's PTSD was so obvious that it warranted an accommodation, Plaintiff failed to demonstrate the accommodation she requested was

reasonable.[4] A "school is required to consider [a] request and make a reasoned decision to grant or deny it." See Forbes, 768 F. Supp. 2d at 1231. An accommodation is unreasonable if it imposes undue financial or administrative burdens or it requires a fundamental alteration in the nature of the program. See Sch. Bd. of Nassau Cnty., Fla. v. Arline, 480 U.S. 273, 288 n.17 (1987). Because "academic faculties have a special understanding about which aspects of the educational experience can be modified, a school's decision about accommodations will be upheld unless it is plainly not based on professional judgment." See Forbes, 768 F. Supp. 2d at 1231. Moreover, neither the ADA nor the Rehabilitation Act requires that a student be given an accommodation of his or her choice. See Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997) ("Stated plainly, under the ADA a qualified individual with a disability is "not entitled to the accommodation of her choice, but only to a reasonable accommodation."); Se. Cmty. Coll. v. Davis, 442 U.S. 397, 413 (1979) ("Section 504 imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person").

Here, Plaintiff's accommodation request was to have another instructor proctor her tests and simulations. Defendants offered the deposition testimony of Karen Steverson to establish that "[t]here wasn't an alternate or a second instructor to teach

---

[4] The Court has considered Plaintiff's interrogatory responses and finds that it constitutes evidence in support of the proposition that Plaintiff's disability was so obvious that Keiser University was aware of that disability.

the particular classes." (Dkt. 57-4 at 8) Plaintiff confirmed Defendants' point when she testified that she "knew that that was not going to be a realistic option because they only have so many instructors and it was made clear to me that they weren't." (Dkt. 57-1 at 89:13-16) Steverson further testified to the cohort nature of the BSN program at Keiser University, in which students enter as a part of a particular cohort and take classes together, so the only way to forgo a class would be to fall behind his or her intended plan of study. (Dkt. 57-4 at 7-8) Plaintiff claims that Drs. Johnson, John, or Brown could have proctored while Plaintiff took her tests and administered the simulations. (Dkt. 57-3 at 89:4-8) Plaintiff did not otherwise offer any evidence to cast doubt on Defendants' decision or their academic rationale. The Court therefore concludes that if it were to consider Plaintiff to have made a request for an accommodation, it would find that the requested accommodation was unreasonable. There is no evidence on this record of Drs. Johnson, John, or Brown's experience and credentials, or their availability to fulfill the requested accommodation such that a genuine issue of fact has been created. Against the current record, Defendants could not have reasonably accommodated Plaintiff's request.[5]

[5] Count I is titled and repeatedly mentions a "reasonable accommodation," but Plaintiff mentions intentional discrimination in her opposition brief to summary judgment, so to the extent that she purported to plead an intentional discrimination or disparate impact theory, the Court finds that theory fails. Plaintiff has offered no evidence that any action by the individual Defendants was taken because of, or is in any way, related to animus against her on account of her disability. <u>See</u> <u>e.g.</u>, <u>Rollins v. Banker Lopez & Gassler, PA</u>, No. 8:19-cv-02336, 2020 WL 5833707, at *3 (M.D. Fla. July 28, 2020) (refusing to consider an alternate theory of liability under the ADA when the complaint did not sufficiently allege that theory).

**B. Retaliation Claims**

Defendants argue they are entitled to summary judgment on Plaintiff's retaliation claims because Plaintiff's "complaining to Ms. Presto and Mr. Trindle about a grade on a paper and Ms. Gentry getting agitated when Plaintiff would convey student concerns do not relate to any protected activity regarding disabilities under the ADA or Rehabilitation Act." (Dkt. 57 at 13) Plaintiff argues (1) "Decker retaliated against her by making her grades worse, changing grades, increasing workloads, making her redo assignments, giving her more assignments, telling her she did not turn in assignments when she did and [requiring her] to resubmit [them], comments made in class, misinformation of exam times and refusing to help her"; (2) "Gentry retaliated against Plaintiff for complaining to Presto and Trindle about Gentry's agitation toward Plaintiff when she conveyed student concerns to Gentry"; (3) "Presto ratified the grades, including grades that should have been recorded as a 'W' but instead were recorded as an 'F'." (Dkt. 61 at 14) The Court finds that Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

To prevail on a retaliation claim under the ADA or Rehabilitation Act, a plaintiff must prove "(1) statutorily protected [activity]; (2) adverse employment action; and (3) a causal link between the protected [activity] and the adverse action." Stewart,117 F.3d at 1287 (ADA claim); Todd v. Fayette Cnty. Sch. Dist., 998 F.3d 1203, 1214 (11th Cir. 2021) ("We analyze claims brought under the ADA and Rehabilitation Act using the same legal framework."). Requesting a reasonable accommodation can constitute statutorily protected activity. See Frazier-White v.

Gee, 818 F.3d 1249, 1258 (11th Cir. 2016) (citation omitted). The ADA otherwise prohibits "retaliation against an individual for opposing an unlawful practice or making a charge under the ADA." See id. (citing 42 U.S.C. § 12203(a)). When a plaintiff does not have direct evidence of retaliation a plaintiff may rely on circumstantial evidence, which triggers the Court's application of the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Owens v. Governor's Off. of Student Achievement, 52 F.4th 1327, 1337 (11th Cir. 2022). Under the McDonnell Douglas framework, Plaintiff bears the initial burden of establishing a prima facie case of retaliation. Id. at 1338.

Here, Plaintiff's retaliation claims fail at the first element of her prima facie case. As explained above, Plaintiff failed to establish she requested a reasonable accommodation, so her retaliation claims fail because the Third Amended Complaint pleads no other theory for how she engaged in protected activity. Plaintiff cannot amend her complaint through her papers in opposition to summary judgment by, for the first time, alleging she had an objectively reasonable belief that her accommodation request opposed Defendants' allegedly unlawful activity. See Dukes, 852 F.3d at 1046. But even if Plaintiff had engaged in statutorily protected activity, her claims would fail at the causal connection step as well.

Plaintiff's evidence on causal connection is threadbare at best, as she cannot establish the individual Defendants' alleged actions against her were even remotely based on her protected activity. "To establish that causal connection, a plaintiff need only show that the protected activity and the adverse action were not wholly

unrelated." Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999). A plaintiff must point to some evidence to connect the protected activity to the adverse action. See Collado v. United Parcel Serv., Co., 419 F.3d 1143, 1160 (11th Cir. 2005) (affirming a trial court's grant of summary judgment when *inter alia* the evidence was insufficient for a jury to reasonably find a causal connection between the protected activity and the adverse action). The Court finds no reasonable jury could find a causal connection between the Zoom meeting request – assuming it constitutes a valid request under federal law – and any action taken by the individual Defendants.

As for Professor Gentry, the Third Amended Complaint alleged Gentry retaliated against Plaintiff "when Professor Gentry began to arbitrarily reduce the number of points [she] would receive on assignments because of her seeking [] accommodations in Professor Decker's class." (Dkt. 40 at ¶ ¶ 88, 96) Nowhere in the Third Amended Complaint has Plaintiff alleged Professor Gentry was aware of Plaintiff's purported accommodation request. Plaintiff does however allege Professor Gentry began to reduce her discussion board by twenty points weekly because her responses contained too much information. Plaintiff only alleged Professor Gentry was "a friend who maintains regular communication with Professor Decker." (Id. at ¶ 52) Plaintiff offers nothing more than speculation of Gentry and Decker's friendship and close timing between the grade changes and her meeting with Dean Trindle and Director Presto as evidence of Professor Gentry's knowledge of the requested accommodation. This is insufficient to establish a causal connection.

As for Director Presto, the Third Amended Complaint alleged Director Presto retaliated against Plaintiff when Presto stated that Plaintiff would "be required to take her exams and simulations with Professor Decker" and that "[Plaintiff] would be required to deal with Professor Decker for the entirety of the BSN program." (Dkt. 40 at ¶ 89) Plaintiff did not testify that Director Presto took any other action against Plaintiff. Defendants offer the uncontroverted testimony of Steverson that there was no other professor to teach Decker's courses and that each professor is assigned based on expertise. Plaintiff therefore failed to show Presto's directive that Plaintiff take classes with Professor Decker was based on Plaintiff's alleged protected activity.

The retaliation claim as directed against Professor Decker also fails as a matter of law. The Third Amended Complaint alleged Professor Decker retaliated against Plaintiff when Decker (1) "began to treat Jasmine poorly because Jasmine had requested more hands-on laboratory assistance;" and (2) "continued to treat Jasmine poorly when Jasmine would seek an explanation for Professor Decker's actions and further protections from Defendants Trindle and Presto." (Dkt. 40 at ¶ 86-87, 94-95) Plaintiff testified her retaliation claim is based on her "asking for help, for going to Ms. Presto, for going to Dean Trindle, for asking for help because things got worse every time that I went to them for help." (Dkt. 57-1 at 68:1-4) Plaintiff then explained how she had experienced a noisy testing environment during an important test and Professor Decker denied Plaintiff the opportunity to re-test, so Plaintiff went to Director Presto for help. (Id. at 68-69) Plaintiff later noticed her grade on the important test went from a 60 to a 50. (Id. at 69:8-10)

Giving Plaintiff every inference to which she is entitled, no evidence on this record shows Professor Decker's actions – while questionable as to their fairness – were connected to Plaintiff's protected activity of requesting an accommodation. Plaintiff's own testimony demonstrates she felt Decker's alleged retaliation was based on Plaintiff going over Decker's head to administration, not Plaintiff's protected activity – requesting an accommodation. (See Dkt. 57-1 at 70:13-19 ("I felt as if [Decker] was retaliating against me with that aspect of it because I was going to [Decker's] supervisors and letting them know how I was being treated and what was going on, what I was experiencing and all the problems that I was having because things were getting worse every time after I would talk with them. [Decker] was treating me worse.")) It is clear Plaintiff and Professor Decker had a difficult student-teacher context well before any purported accommodation request was made. Plaintiff has offered no evidence that the help she sought from Decker's superiors concerned her disability and this finding is supported by Plaintiff's testimony that she was asking for help (1) with an improperly proctored examination (Dkt. 57-1 at 69:13-19); (2) to retake an examination (Dkt. 57-1at 69:5-7); and (3) to attain what she thought was an accurate grade on an in-class paper (Dkt. 57-1 at 42:17-21).

Thus, there is no evidence in this record from which a reasonable jury could conclude Plaintiff has satisfied the first or third elements of her retaliation claims. Defendants are entitled to summary judgment on Counts III and IV.

### C. Interference Claims

Defendants argue they are entitled to summary judgment on Counts V and VI because there is no evidence Keiser University interfered with Plaintiff's ability to request an accommodation. (Dkt. 57 at 14) Defendants also explain that Plaintiff could have requested an accommodation before she started the BSN program and at any point during the BSN program. (Id. at 15) Plaintiff offers no substantive argument in support of her interference claims.[6] The Court finds Defendants are entitled to summary judgment for the following reasons.

The ADA's anti-interference provision provides that:

> [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

42 U.S.C. § 12203(b). When a plaintiff cannot or has not asserted a right under the ADA, their interference claim will fail. See e.g., Equal Emp. Opportunity Comm'n v. STME, LLC, 938 F.3d 1305, 1321 (11th Cir. 2019).

[6] Defendants are also entitled to summary judgment on the interference claims for this reason alone. See Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed . . . when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (internal citations and quotations omitted)); see also Res. Tr. Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (declining to address argument raised on appeal but not raised in response to motion for summary judgment); Leftwich v. Bd. of Educ. of City of Marietta, No. 1:23-cv-674, 2024 WL 6081829, at *12 (N.D. Ga. Jan. 26, 2024) ("Because Leftwich has not addressed any claims for discrimination or coercion/interference under Section 504 [of the Rehabilitation Act] . . . , she has abandoned these claims, and the Board's summary judgment motion is due to be granted as to these claims[.]").

This Court is unaware of any binding Eleventh Circuit case articulating the elements of an ADA-interference claim. See Atchison v. Bd. of Regents of Univ. Sys. of Ga., 802 F. App'x 495, 508 (11th Cir. 2020) (recognizing same);[7] see also Collins v. Dekalb Cnty., Ga., 824 F. Supp. 3d 1306, 1334 (N.D. Ga. 2026) (recognizing same but noting that district courts have "found that to make out an ADA interference claim, a plaintiff must show that (1) he exercised a right protected by the ADA; (2) the defendant coerced, intimidated, threatened, and/or interfered with plaintiff's exercise of that right; and (3) the defendant's actions were motivated because the plaintiff exercised a right protected by the ADA"). The Court is similarly unaware of any binding Eleventh Circuit recognizing a distinct cause of action of "Interference" under the Rehabilitation Act. See Lamar v. Ala. Dep't of Conservation & Nat. Res., No. 1:14-CV-571, 2016 WL 8814808, at *20 (M.D. Ala. July 26, 2016), report and recommendation adopted as modified sub nom. Lamar v. State of Ala. Dep't of Conservation, 2017 WL 517824 (Feb. 8, 2017).

This Court finds Defendants are entitled to summary judgment on Counts V and VI because Plaintiff has failed to establish that Defendants coerced, intimidated, threatened, or interfered with her exercise or enjoyment of a right protected by the ADA – the ability to request an accommodation. Moreover, an interference claim does not appear cognizable based on the plain text of the Rehabilitation Act. See Lamar,

---

[7] The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. See 11th Cir. R. 36-2." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Where cited here, any unreported decision of a panel of the Circuit is considered well-reasoned and is offered as persuasive, not binding authority.

2016 WL 8814808, at *20; Menoken v. Lipnic, 300 F. Supp. 3d 175, 188 (D.D.C. 2018), aff'd in part, rev'd in part, and remanded sub nom. Menoken v. Dhillon, 975 F.3d 1 (D.C. Cir. 2020). Defendants are therefore entitled to summary judgment on these claims.

### D. Remaining State Law Claims

The Court, having dismissed the federal claims, declines to assert supplemental jurisdiction over the pendent breach of contract, breach of duty of good faith and fair dealings, breach of express warranties, negligent misrepresentation, deceptive and unfair trade practices, unjust enrichment, and negligence claims because the appropriate forum for Plaintiff's state-law claims is the court of the state under whose law the alleged acts and omissions are claimed. See Faucher v. Rodziewicz, 891 F.2d 864, 871 (11th Cir. 1990) ("If the federal claims are dismissed prior to trial, Gibbs strongly encourages or even requires dismissal of the state claims."). Thus, Counts VII through XIII are **DISMISSED WITHOUT PREJUDICE.** Plaintiff may pursue those claims in State Court to the extent that they are viable.

## IV. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED**:

1. Defendants' Motion for Summary Judgment, (Dkt. 57), is **GRANTED as to Counts I, II, III, IV, V, and VI** of the Third Amended Complaint. **Counts VII through XIII** are **DISMISSED WITHOUT PREJUDICE**.

**2.** The Clerk is **DIRECTED** to enter judgment, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 20th day of July 2026.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person